IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DYSON, INC., | ) |
|     *Plaintiff*, | ) |
| v. | ) Case No.: 14-cv-9442 |
| EURO-PRO OPERATING LLC and EURO-PRO SALES COMPANY, | ) Judge: |
|     *Defendants*. | ) **JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff Dyson, Inc. ("Dyson"), by its attorneys Kirkland & Ellis LLP, complains against Defendants Euro-Pro Operating LLC and Euro-Pro Sales Company (collectively, "Euro-Pro"), for Euro-Pro's false advertising relating to its vacuum cleaner products. In support of its Complaint, Dyson alleges the following based upon knowledge of its own acts and actions and upon information and belief as to all other matters.

## NATURE OF SUIT

1. Dyson is the leading innovator in the vacuum cleaner industry. Although Dyson did not enter the U.S. market until 2002, it swiftly became a market leader due to ground-breaking advancements that revolutionized vacuum cleaner technology.

2. Perhaps the most widely-recognized aspect of Dyson's ingenuity is its signature "cyclone" technology, which allows Dyson's vacuums to generate and maintain a powerful, continuous force of suction. This suction power is a significant feature that helps Dyson's vacuums deliver some of the best pick-up performance in the industry on carpets, and to surpass *all* other vacuums' performance on carpets and hard floors combined. As part of its newest

generation of products, Dyson combined these and other innovations to create the DC65, Dyson's top-of-the-line full-sized upright vacuum, which improves upon Dyson's already impressive technology and features to offer the best overall cleaning performance of any Dyson vacuum cleaner to date when its performance is evaluated across the full range of floors commonly found in U.S. homes (*i.e.*, carpets, flat hard floors, and hard floors with crevices).

3. Like Dyson, Euro-Pro distributes and sells vacuum cleaners in the United States. Euro-Pro's vacuums typically are sold at much lower prices than Dyson's vacuums and are of lower quality than Dyson's products with respect to several key performance metrics.

4. Knowing it cannot compete with Dyson's superior technology and innovation, Euro-Pro instead attempts to compete with Dyson through false and aggressive advertising. Historically, Euro-Pro had adopted a strategy of promoting its vacuums as being "as good as" Dyson's vacuums, but at a lower price. Recently, however, Euro-Pro has gone further and claimed superiority over all Dyson vacuums—and over *all* other upright vacuum cleaners on the market. While Euro-Pro's aggressive superiority claims have sometimes been based on inadequate and unreliable data, more often they have been based on no data at all. Indeed, the National Advertising Division of the Council Better Business Bureau (the advertising industry's self-regulatory body, referred to as "NAD") has twice, during this year alone, examined Euro-Pro's superiority claims, found them to be false and misleading, and recommended that Euro-Pro stop making its unsupported claims.

5. Rather than responding to NAD's recommendations by releasing truthful and accurate advertising going forward, in late September 2014, Euro-Pro launched a new and inaccurate marketing campaign for its latest upright vacuum cleaner product, the Shark Rotator Powered Lift-Away. Disseminated nationwide and across all media, including via the internet,

infomercials, television commercials, and print ads, this new campaign centers on a direct assault against Dyson and its top-of-the-line DC65 upright vacuum. Euro-Pro expressly and falsely claims that the Shark Rotator Powered Lift-Away cleans better than the DC65 vacuum on carpets, and specifically claims that the Shark Rotator Powered Lift-Away outperforms the DC65 on one type of carpet by nearly 15%. To the contrary, robust independent testing shows that Euro-Pro's claims are false. The DC65 picks up more dust and dirt from carpets than the Shark Rotator Powered Lift-Away when the two vacuums are properly tested head-to-head under the industry-accepted test protocol for measuring cleaning performance on carpets, ASTM F608.

6. Euro-Pro's false advertising campaign is harmful to both Dyson and consumers. Euro-Pro's false claims of superiority over Dyson's DC65 threaten Dyson with lost sales, loss of goodwill, loss of market share, and irreparable harm. At the same time, Euro-Pro's false statements about its—and Dyson's—vacuums deceive consumers about the performance and capabilities of these products. Moreover, the timing of Euro-Pro's new campaign is particularly damaging and problematic, because the holiday shopping season is fast approaching.

## PARTIES

7. Dyson is an Illinois corporation with its principal place of business at 600 West Chicago Avenue, Suite 275, Chicago, Illinois 60654. Dyson is an affiliate of the Dyson group of companies based in the United Kingdom. (Dyson and the Dyson group of companies are sometimes collectively referred to as the "Dyson Companies.") The Dyson Companies design, manufacture, market, and sell certain products and related accessories, including upright, canister, and handheld vacuum cleaners, as well as various parts and accessories for those vacuum cleaners. These products are sold throughout the United States, including in this judicial district.

8. Upon information and belief, Defendant Euro-Pro Operating LLC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 180 Wells Avenue, Suite 200, Newton, Massachusetts 02459.

9. Upon information and belief, Defendant Euro-Pro Sales Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 180 Wells Avenue, Suite 200, Newton, Massachusetts 02459.

10. Euro-Pro (that is, Defendants Euro-Pro Operating LLC and Euro-Pro Sales Company, collectively) markets and sells consumer appliances, including vacuum cleaners, steam mops, handheld steam cleaners, irons, blenders, and other small kitchen appliances, in this judicial district and throughout the United States. The offending advertising statements have been distributed and otherwise published in this judicial district, as well as throughout the United States.

11. Euro-Pro competes with Dyson in the U.S. vacuum cleaner market. In fact, Euro-Pro's advertising focuses on expressly comparing its Shark brand vacuum cleaners to Dyson vacuums. In virtually all of its advertising and on the packaging for many of its products, Euro-Pro makes a number of direct comparisons between Euro-Pro and its products on the one hand and Dyson and Dyson's products on the other. Euro-Pro's vacuum cleaners and Dyson's vacuum cleaners both are sold at numerous, overlapping retail outlets, including Lowe's, Amazon, Best Buy, Target, Wal-Mart, Bed Bath & Beyond, and Kohl's, among others.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Count One, for false advertising, arises under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Counts Two and Three, for deceptive trade practices and false

advertising under Illinois law, are so related to the preceding claims for relief that they form part of the same case or controversy, thereby giving this Court supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related state law claims. Alternatively, this Court has subject matter jurisdiction over all claims in this matter pursuant to 28 U.S.C. § 1332(a), because this is a civil action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13. This Court has personal jurisdiction over Euro-Pro because, upon information and belief, Euro-Pro regularly transacts and solicits business from customers residing in this judicial district and the state of Illinois, including via the false and misleading advertisements at issue in this action; Euro-Pro has caused tortious injury in this judicial district and the state of Illinois through the false and misleading advertisements at issue in this action; and Euro-Pro regularly derives substantial revenue from the sale of its products to retailers located in this judicial district and the state of Illinois, as well as directly to persons in this judicial district and the state of Illinois through retail stores and the Internet.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), because, upon information and belief, Euro-Pro is subject to personal jurisdiction in this judicial district and therefore resides in this judicial district; Euro-Pro's unlawful conduct has injured Dyson within this judicial district; Euro-Pro conducts business in this judicial district; and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## EURO-PRO'S FALSE AND MISLEADING CLAIMS PROMOTING ITS SHARK ROTATOR POWERED LIFT-AWAY VACUUM CLEANER

15. Euro-Pro's advertising for its Shark Rotator Powered Lift-Away vacuum cleaner includes a number of false and misleading comparative claims extolling the product's supposedly

5

superior cleaning performance versus Dyson's latest upright vacuum cleaner model, the DC65. Euro-Pro makes these claims in an extended infomercial for the Shark Rotator Powered Lift-Away, in shorter television commercials, in print ads, on banner ads, on the product's packaging, and on Euro-Pro's www.sharkclean.com website. These superior performance claims are false, as Dyson has independent laboratory testing that repeatedly proves that the DC65 cleans carpets better than the Shark Rotator Powered Lift-Away, under the relevant industry test protocol.

<u>Euro-Pro's False Advertising Campaign For Its Shark Rotator Powered Lift-Away</u>

16. In its marketing campaign for the Shark Rotator Powered Lift-Away, Euro-Pro repeatedly and pervasively tells consumers that its Shark Rotator Powered Lift-Away vacuum "deep cleans carpets better than Dyson's best vacuum."

17. For example, in Euro-Pro's infomercial for the Shark Rotator Powered Lift-Away, which features Euro-Pro's CEO alongside a spokeswoman, the CEO exclaims: "***In fact, my new Rotator Powered Lift-Away has more suction and deep-cleans carpets better than Dyson's best vacuum***," while the claim is prominently displayed in text onscreen, with a small-print disclaimer that states, "Shark® NV650 vs. Dyson® DC65 based on ASTM F558 measured at the hose & ASTM F608 embedded dirt (NV650 in carpet/low pile mode)."



18. Euro-Pro's CEO goes on to assert that Euro-Pro has "independent lab tests" to back up this superior performance claim: "We asked independent testing facilities to conduct the one and only, industry-recognized test of carpet cleaning, and we went head-to-head with Dyson's best. Both vacuums were tested on four of the most commonly-owned carpet types in America, and when all was said and done, *the independent lab tests proved without question that our new Shark Rotator Powered Lift-Away deep-cleans carpets better than Dyson's best $600 vacuum*."

19. Euro-Pro makes similar superior carpet cleaning claims on its website, in television spots, and on its product packaging. Euro-Pro's webpage for the Shark Rotator Powered Lift-Away proclaims that the product "Cleans Carpets Better** Compared to Dyson®'s Best Vacuum!," with the disclaimer, "**Based on the ASTM F608 in Carpet/Low Pile mode vs. Dyson® DC65."

20. For example, in a 15-second television commercial, Euro-Pro claims that the Shark Rotator Powered Lift-Away "deep cleans better than a $600 Dyson":



21. In addition to its recent television blitz, Euro-Pro also recently expanded its advertising campaign for the Shark Rotator Powered Lift-Away to print advertising, making the same types of false claim in nationwide magazines. For instance, Euro-Pro ran the following

7

full-page ad in the November 17, 2014 edition of People Magazine, claiming that its new product offers "Cleaner Carpets vs Dyson's Best Vacuum":



22. Similarly, on its product's packaging, Euro-Pro claims that the Shark Rotator Powered Lift-Away "cleans carpets better vs. Dyson's best vacuum." In fact, Euro-Pro offers the Shark Rotator Powered Lift-Away in three models—the NV650, NV651, and NV652—and the identical "cleans carpets better" claim is made on all three packages, as shown below.

8







Independent Lab Testing Proves Euro-Pro's Superior Performance Claims Are False

23. Euro-Pro's claims that the Shark Rotator Powered Lift-Away outperforms the Dyson DC65 vacuum on carpets are demonstrably false and misleading. Independent testing commissioned by Dyson confirms that the DC65 outcleans the Shark Rotator Powered Lift-Away on carpets.

24. ASTM F608-13 is the industry-accepted test protocol for evaluating a vacuum cleaner's effectiveness at removing embedded dirt from carpets. ASTM F608-13 calls for using multiple units of a vacuum and testing how much dirt each unit picks up from four different

9

types of carpet—shag, plush, multi-level, and level loop. A vacuum's "score" is the geometric mean calculated from the pick-up from the different carpet types. A higher score indicates better performance.

25. The standard sets forth certain testing requirements, including the amount and type of debris used, the use of calibrated carpet test samples, sufficiently similar laboratory conditions, and standardized cleaning paths across carpets. The ASTM F608 protocol also requires that, when a machine has different settings for different carpet types, the machines' settings must be adjusted based on the manufacturer's instructions.

26. Dyson retained IBR Laboratories—an accredited, independent laboratory that is the leading third-party testing laboratory in the vacuum-cleaner industry—to test the Dyson DC65 against the Shark Rotator Powered Lift-Away under the ASTM F608-13 protocol.

27. When tested by IBR pursuant to ASTM F608-13 in September 2014, the DC65 had an overall score of 34.3. This result is consistent with past testing of the DC65 by IBR. For example, in March 2014, IBR tested the DC65 under under ASTM F608-13 and obtained a score of 34.7. Moreover, upon information and belief, Euro-Pro commissioned an independent laboratory to test the DC65 pursuant to ASTM F608-13, and the laboratory observed a score of 33.5. In other words, two different independent laboratories have tested the DC65's cleaning performance on carpets on three separate occasions using the industry-standard test, and the product's score has been consistent.

28. The Shark Rotator Powered Lift-Away NV651 offers two settings for cleaning carpets. Specifically, the product manual for the Shark Rotator Powered Lift-Away NV651 indicates that the setting should be changed depending on whether the carpet type is high-pile

(*i.e.*, thicker) carpet or low-pile carpet, as the following excerpt from the Shark Rotator Powered Lift-Away NV651 product manual demonstrates:



29. On information and belief, the Shark Rotator Powered Lift-Away model NV651 and Shark Rotator Powered Lift-Away model NV650 are mechanically identical.

30. In November 2014, IBR tested five Shark Rotator Powered Lift-Away model NV651 units. As called for in the ASTM protocol and as Euro-Pro instructs in its manual, IBR adjusted the settings on the NV651 relative to the type of carpet. When tested by IBR pursuant to ASTM F608-13 and in accordance with Euro-Pro's instruction manual to consumers, the Shark Rotator Powered Lift-Away model NV651 had an overall score of only 29.5.

31. In September 2014, IBR also tested the Shark Rotator Powered Lift-Away model NV651 vacuum under the manipulated version of ASTM F608-13 reflected in Euro-Pro's ads. For this test, Dyson instructed IBR to set all the NV651 units on the low-pile carpet setting for all four carpet types identified in the protocol, because that is how Euro-Pro claims to have

conducted its testing per its disclaimer. This test method, however, is a deviation from the ASTM protocol and contrary to how Euro-Pro instructs consumers to use the Shark Rotator Powered Lift-Away. Regardless, even when tested under Euro-Pro's modified method, the Shark Rotator Powered Lift-Away model NV651 had an overall score of only 28.9.

32. In October and November 2014, IBR also tested numerous Shark Rotator Powered Lift-Away model NV652 vacuums under ASTM F608-13. Similar to the NV651 testing, when IBR properly adjusted the settings on the NV652 relative to the type of carpet—as Euro-Pro instructs in its manual and as ASTM F608-13 protocol dictates—the results of that testing show an overall score of only 33.4 for the Shark Rotator Powered Lift-Away model NV652, further confirming that the DC65 cleans carpets better than any Shark Rotator Powered Lift-Away model.

33. IBR's robust, independent testing shows that the Dyson DC65 repeatedly and consistently achieved a higher score under the ASTM F608-13 protocol than the Shark Rotator Powered Lift-Away models. Euro-Pro's claims to the contrary regarding the vacuums' comparative performances are false and misleading.

<u>Euro-Pro's Quantified Superior Performance Claim Also Is False And Misleading</u>

34. Euro-Pro also promotes the Shark Rotator Powered Lift-Away's allegedly superior carpet cleaning performance with a graphic indicating that its vacuum outperforms the DC65 by a quantified factor of 42 to 37 (with the Shark Rotator Powered Lift-Away allegedly picking up 42 grams of dust from "carpets" while the DC65 picks up only 37 grams):



35. This graphic communicates a specific quantified comparative cleaning performance claim across multiple carpet types. Onscreen text asserts that "Shark deep cleans *carpets* better than $600 Dyson." Immediately preceding this graphic's appearance in the Shark Rotator Powered Lift-Away infomercial, Euro-Pro's CEO states, "Both vacuums were tested on *four* of the most commonly-owned carpet types in America, and . . . our new Shark Rotator Powered Lift-Away deep cleans carpets better than Dyson's best $600 vacuum."

36. In fact—contrary to Euro-Pro's claim—IBR's independent laboratory testing proves that, when test on multi-level carpet alone per ASTM F608-13, the DC65 removed 40.2 grams of dirt, while the Shark Rotator Powered Lift-Away model NV651 removed only 27.6 grams in one test and 32.5 in another, and model NV652 removed only 30.5 and 37.6 grams. This robust, independent testing demonstrates that no Shark Rotator Powered Lift-Away model outperforms the DC65 on multi-level carpet alone. Thus, Euro-Pro's graph, claiming that the Rotator Powered Lift-Away out cleans the DC65 by a measure of 42 grams to 37 grams on multi-level carpet, is literally false.

13

37. Although Euro-Pro improperly attempts to restrict its quantified claim to performance on a single carpet type, via a fleeting, small-print disclaimer that states, "Shark® NV650 vs. Dyson® DC65 ASTM F608 in carpet/low pile mode (embedded dirt in multi-level carpet sample)," IBR's testing indicates that the DC65 outcleans the Shark Rotator Powered Lift-Away on multi-level carpet under the ASTM F608-13 protocol.

38. For these reasons, Euro-Pro's quantified superior carpet cleaning claim is also false and misleading.

<u>Euro-Pro's False Advertising Claims Are Material And Willful</u>

39. Euro-Pro's superior carpet cleaning performance claims are material to consumers because they are likely to influence consumers' purchasing decisions. Indeed, cleaning performance is a key—if not the key—attribute of a vacuum cleaner's performance.

40. Euro-Pro itself recognizes the materiality of these claims, as evidenced by its prominent use of the claims in nearly all of the advertisements in its Shark Rotator Powered Lift-Away marketing campaign, its ads' focus on comparative claims versus with the DC65 throughout its full-length Shark Rotator Powered Lift-Away infomercial, and the prominent display of the superiority carpet cleaning performance claim on four sides of the Shark Rotator Powered Lift-Away's packaging.

41. Upon information and belief, Euro-Pro's false advertising is willful and knowing, as Euro-Pro continues to make and disseminate its claims that the Shark Rotator Powered Lift-Away outperforms the DC65 on carpets.

<u>Euro-Pro's False Advertising Campaign Is Causing Irreparable Harm To Dyson</u>

42. Euro-Pro's false and misleading superior carpet cleaning performance claims are causing harm to Dyson in the marketplace, as they are likely to mislead consumers about the

performance of the Shark Rotator Powered Lift-Away (and the DC65) when consumers make vacuum cleaner purchasing decisions.

43. Euro-Pro's claims compare its products directly with Dyson's vacuums, and Euro-Pro expressly references Dyson by name throughout its advertisements. This false comparative advertising causes irreparable harm to Dyson.

44. Euro-Pro's false statements that the Shark Rotator Powered Lift-Away cleans carpets better than the Dyson DC65 diminish Dyson's goodwill among customers. Because Euro-Pro's advertisements expressly identify Dyson by name, they tarnish the Dyson brand name to retailers and consumers.

45. The harm to Dyson is exacerbated because Euro-Pro's false advertising will be disseminated during the most significant buying season, the holiday season. Nearly twenty percent of all vacuum cleaner sales in the United States are made during the November and December holiday season, and Dyson's sales during these two months alone account for approximately 28% of Dyson's overall annual vacuum cleaner sales.

## COUNT ONE: FALSE ADVERTISING UNDER THE LANHAM ACT

46. Dyson hereby realleges and incorporates by reference paragraphs 1 through 45 of this Complaint as if set forth fully herein.

47. Euro-Pro's commercial advertising claims described herein are false and misleading in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48. Euro-Pro has made material false and misleading statements in its commercial advertisements for its vacuum cleaner products, and these statements regarding vacuum cleaner performance have and are likely to continue to influence consumers' purchasing decisions.

15

49. Euro-Pro's statements—including its various literally false claims—have the tendency to deceive a substantial segment of consumers, who have relied or likely will rely on Euro-Pro's false statements in making their vacuum cleaner purchase decisions.

50. Euro-Pro has caused its false statements to enter interstate trade or commerce.

51. As a direct and proximate result of Euro-Pro's false and deceptive campaign, Dyson is suffering immediate and continuing irreparable injury for which there is no adequate remedy at law.

52. As a direct and proximate result of these actions, Dyson has suffered and will continue to suffer significant monetary damages and discernible competitive injury by the direct diversion of sales from Dyson to Euro-Pro and by a loss of goodwill associated with Dyson's vacuum cleaner products and brand.

53. Euro-Pro's false advertising is knowing and willful. Dyson is entitled to injunctive relief and to the recovery of all available damages, attorneys' fees, costs, and Euro-Pro's profits.

54. This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117.

COUNT TWO: DECEPTIVE TRADE PRACTICES UNDER 815 ILCS 510/1, *et seq.*

55. Dyson hereby realleges and incorporates by reference paragraphs 1 through 45 of this Complaint as if set forth fully herein.

56. Both Dyson and Euro-Pro are engaged in trade and commerce in the state of Illinois, and both are engaged in interstate trade or commerce.

57. Euro-Pro has represented that its vacuum cleaners have characteristics, uses, and/or benefits that they do not have.

58. Euro-Pro has represented that its goods are of a particular standard, quality, or grade when they are not.

59. Euro-Pro's false and misleading advertising claims disparage Dyson and Dyson's products by asserting false and misleading representations of fact about the performance of Dyson's vacuum cleaners, both alone and in comparison to Euro-Pro's products.

60. Euro-Pro's actions involve advertising and trade practices which are addressed to the market generally and implicate consumer protection concerns.

61. Euro-Pro's conduct constitutes deceptive acts or practices in the course of business, trade, or commerce in violation of 815 ILCS 510/2, including misrepresentation and concealment or omission of material facts in its advertising, with intent that others will rely upon the misrepresentation, concealment, or omission of such material facts.

## COUNT THREE: FALSE ADVERTISING UNDER ILLINOIS COMMON LAW

62. Dyson hereby realleges and incorporates by reference paragraphs 1 through 45 of this Complaint as if set forth fully herein.

63. Both Dyson and Euro-Pro are engaged in trade and commerce in the state of Illinois, and both are engaged in interstate trade or commerce.

64. Euro-Pro's actions involve advertising and trade practices which are addressed to the market generally and implicate consumer protection concerns.

65. Euro-Pro's conduct constitutes unfair competition, including misrepresentation and concealment or omission of material facts in its advertising. Euro-Pro intended that others rely upon that misrepresentation, concealment, or omission of such material facts.

66. Euro-Pro's statements have actually deceived and have the tendency to deceive a substantial segment of consumers, who have relied or likely will rely on Euro-Pro's false statements in making their vacuum cleaner purchase decisions.

PRAYER FOR RELIEF

WHEREFORE, Dyson prays for relief against Euro-Pro, and respectfully requests an entry of judgment as follows:

1. For a preliminary and permanent injunction which:

   a. Preliminarily and permanently enjoins Euro-Pro, its officers, agents, servants, and employees, and all persons in active concert and participation with them, including their affiliates, from further disseminating the false and deceptive advertising claims in any form or medium;

   b. Requires Euro-Pro to withdraw and/or retrieve all offending advertising materials from the marketplace; and

   c. Requires Euro-Pro to disseminate among consumers corrective advertising, including corrective product packaging, to dispel the false and deceptive messages contained in the subject advertising;

2. For an order directing Euro-Pro to account for, and to pay over to Dyson, all gains, profits, and advantages derived by Euro-Pro from the above-described wrongful acts;

3. For monetary damages sustained by Dyson as a result of Euro-Pro's unlawful conduct, in an amount to be proved at trial;

4. For a finding that Euro-Pro's actions are exceptional under 15 U.S.C. § 1117;

5. For an order multiplying or otherwise enhancing any award because of Euro-Pro's willful and deliberate activities described herein;

6. Directing that Euro-Pro pay Dyson the costs of this action and its reasonable attorneys' fees incurred herein as authorized by law; and

7. Granting Dyson such other and further relief as this Court deems just and proper.

## JURY DEMAND

Dyson hereby demands a jury trial on all issues appropriately triable by a jury.

Dated: November 25, 2014        Respectfully submitted,

By: */s/ Robin A. McCue*
Robin A. McCue (IL Bar No. 6256551)
rmccue@kirkland.com
Ian J. Block (IL Bar No. 6299117)
ian.block@kirkland.com
Susan L. Tanaka (IL Bar No. 6314120)
susan.tanaka@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Gregg F. LoCascio, P.C. (*pro hac vice* pending)
glocascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Plaintiff Dyson, Inc.*