**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DYSON, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No.:  1:14-cv-09442 |
| v. | ) | |
| | ) | Judge:  Honorable Joan B. Gottschall |
| EURO-PRO OPERATING LLC and | ) | |
| EURO-PRO SALES COMPANY, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**PLAINTIFF DYSON, INC.'S OPPOSITION TO DEFENDANTS
EURO-PRO OPERATING LLC AND EURO-PRO SALES COMPANY'S
<u>MOTION TO DISMISS, TRANSFER, OR STAY</u>**

## TABLE OF CONTENTS

I.      Factual Background ..........................................................................................3

II.     Dyson's Claims Should Not Be Dismissed Because They Do Not Trigger The
        First-To-File Doctrine And Are Not Compulsory Counterclaims. ...........................6

        A.      The First-To-File Doctrine Does Not Apply. .........................................7

                1.      This Case Is Not Duplicative Of The Massachusetts Case, And
                        There Is No Risk That The Two Courts Could Issue Inconsistent
                        Rulings. ...........................................................................7

                2.      The First-To-File Doctrine Is Not Applicable Because Dyson Is
                        Entitled To Be Heard On Its Motion For Expedited Relief. .......................9

                3.      Euro-Pro Has Not Cited A Single Case That Supports Application
                        Of The First-To-File Doctrine In This Case. .............................11

        B.      Dyson's Claims Are Not Compulsory Counterclaims ...........................................12

III.    Transfer Under 28 U.S.C. § 1404(a) Is Not Warranted. ...............................................14

IV.     Conclusion ...................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. CVS Pharmacies, Inc.*,
No. 01 C 2772, 2001 WL 777060 (N.D. Ill. July 11, 2001) .............................................. 8

*Alchemist Jet Air, LLC v. Century Jets, Aviation, LLC*,
No. 08 C 5386, 2009 WL 1657570 (N.D. Ill. June 12, 2009) ......................................... 10

*Black v. Hollinger Int'l, Inc.*,
No. 04 C 2454, 2004 WL 2496590 (N.D. Ill. Nov. 3, 2004) ........................................... 13

*Board of Regents of Univ. of Wisc. Sys. v. Phoenix Int'l Software, Inc.*,
653 F.3d 448 (7th Cir. 2011) ..................................... 13

*Burlington Northern R. Co. v. Strong*,
907 F.2d 707 (7th Cir. 1990) ..................................... 12

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*,
258 F.R.D. 663 (W.D. Wash. 2009) ..................................... 9

*Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*,
34 F. Supp. 2d 1092 (N.D. Ill. 1999) ..................................... 11

*Chrysler Corp. v. Marino*,
63 F.3d 574 (7th Cir. 1995) ..................................... 7

*Coffey v. Van Dorn Iron Works*,
796 F.2d 217 (7th Cir. 1986) ..................................... 14

*Gaither Tool Co. v. Tire Serv. Equip. Mfg., Inc.*,
No. 96 C 8094, 1997 WL 403583 (N.D. Ill. July 16, 1997) ............................................. 14

*Galileo Int'l P'ship v. Global Village Comm., Inc.*,
No. 96 C 3554, 1996 WL 452273 (N.D. Ill. Aug. 8, 1996)........................................ 10, 11

*Gregg Commc'ns Sys., Inc. v. Am. Tel. & Tel. Co.*,
575 F. Supp. 1269 (N.D. Ill. 1984) ..................................... 14

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
276 F.3d 160 (3d Cir. 2001)..................................... 9

*Humphrey v. United Healthcare Servs., Inc.*,
No. 14 C 1157, 2014 WL 3511498 (N.D. Ill. July 16, 2014) ..................................... 7

ii

*Kim v. Sara Lee Bakery Group, Inc.*,
    412 F. Supp. 2d 929 (N.D. Ill. 2006) ........................................................................ 8, 13

*McReynolds v. Merrill Lynch & Co.*,
    694 F.3d 873 (7th Cir. 2012) ...................................................................................... 11

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012)..................................................................................... 8

*Miller v. SKF USA, Inc.*,
    No. 10 C 6191, 2010 WL 5463809 (N.D. Ill. Dec. 29, 2010) ......................................... 10

*Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*,
    No. 95 C 7255, 1997 WL 370204 (N.D. Ill. June 27, 1997) ...................................... 12, 13

*New SVE, Inc. v. UAV Corp.*,
    No. 03 C 578, 2003 WL 1826127 (N.D. Ill. Apr. 8, 2003).............................................. 13

*Patel v. Am. Tel. & Tel., Inc.*,
    No. 93 C 117, 1993 WL 384569 (N.D. Ill. Sept. 27, 1993).............................................. 11

*Pfizer, Inc. v. Apotex, Inc.*,
    640 F. Supp. 2d 1006 (N.D. Ill. 2009) .......................................................................... 11

*Preci-Dip, SA v. Tri-Star Elecs., Int'l, Inc.*,
    No. 08 C 4192, 2008 WL 5142401 (N.D. Ill. Dec. 4, 2008) .................................. 7, 8, 11

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
    626 F.3d 973, 975 (7th Cir. 2010) ................................................................................. 8

*Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*,
    572 F. Supp. 1210 (N.D. Ill. 1983) ............................................................................... 11

*Schiller v. Packaging Store, Inc.*,
    690 F. Supp. 711 (N.D. Ill. 1988) ................................................................................. 11

*Schumacher Elec. Corp. v. Vector Prods., Inc.*,
    286 F. Supp. 2d 953 (N.D. Ill. 2003) ..................................................................... passim

*Serlin v. Arthur Andersen & Co.*,
    3 F.3d 221 (7th Cir. 1993) ............................................................................................ 7

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
    819 F.2d 746 (7th Cir. 1987) ......................................................................................... 9

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    No. 05 C 4811, 2005 WL 3601936 (N.D. Ill. Oct. 31, 2005).......................................... 10

*Vandeveld v. Christoph*,
    877 F. Supp. 1160 (N.D. Ill. 1995) ...................................................................................... 14

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................................ 14

**Rules**

Fed. R. Civ. P. 13(a) ................................................................................................................ 12, 13

In *September*, Defendant Euro-Pro Operating LLC filed suit against Dyson, Inc. in the District of Massachusetts, challenging Dyson's "Twice the Suction" advertising claim. Euro-Pro did not seek any sort of expedited relief and, in fact, **did not even serve the complaint for more than two months (until last week)**. The reason Euro-Pro did not prosecute the Massachusetts case is simple: that case has been essentially resolved for over a month. As a result, Euro-Pro had no interest in even serving, much less pursuing, the Massachusetts action until it got sued by Dyson over its own (unrelated) advertising two weeks ago. Without a credible explanation for its recent ad blitz of false carpet-cleaning claims and facing a preliminary injunction, Euro-Pro apparently had a "clever" idea: to try to transform its previously-unserved, defunct Massachusetts case into a basis to transfer and delay this case, and in the process obtain another free month or more of unabated false advertising through procedural maneuvering.

To try to get there, Euro-Pro takes great liberties with the facts to allege a relationship between these two matters that does not exist. Indeed, the actual facts refute Euro-Pro's core premise, because, other than involving advertising disputes between two competitors, the Massachusetts case is unrelated to the matter before this Court:

- **The ads are different.** In this case, **Euro-Pro's ads** are being challenged. In the Massachusetts case, **Dyson's ads** were being challenged.

- **The performance criteria are different.** In this case, the ads involve **carpet cleaning**, which is determined by calculating the geometric average of dirt removed (measured in grams) from four different carpet types. In the Massachusetts case, the ads involve **suction power**, which is measured as the maximum number of air watts at the nozzle.

- **The testing standards are different.** In this case, the relevant test method is ASTM **F608**, "Standard Test Method for Evaluation of Carpet Embedded Dirt Removal Effectiveness of Household / Commercial Vacuum Cleaners." That test is not at issue in the Massachusetts case, where the relevant test method is ASTM **F558**, called "Standard Test Method for Measuring Air Performance Characteristics of Vacuum Cleaners." These tests are performed differently, measured differently, and the results obtained from one test have no bearing whatsoever on the other.

- **The legal issues are different.** In this case, the legal issue to be decided is whether Euro-Pro's claims of carpet cleaning superiority are false. In the Massachusetts case, the legal issue would be whether Dyson removed its claim from the market in good faith once a new product's introduction to the market rendered the claim stale.

- **The relief sought and exigency of the matters are different.** In this case, Dyson seeks a preliminary injunction to stop Euro-Pro's new pervasive advertising blitz that is currently misleading consumers in the weeks leading up to Christmas. In the Massachusetts case, Euro-Pro did not move for a preliminary injunction and could not do so because Dyson is no longer making the advertising claims at issue.

In its motion, Euro-Pro glosses over or outright mischaracterizes these factual differences in an attempt to portray similarities that do not exist. For example, in the instant motion, Euro-Pro repeatedly claims that the "same industry standard testing protocols" are at issue in both cases, (Dkt. No. 19 at 1), yet it is undisputed that *ASTM F558 and ASTM F608 are __not__ the same testing protocol*. Indeed, despite its claims to this Court, Euro-Pro previously insisted that ASTM F558 "does not tell the consumer *anything relevant about how well the vacuum can clean*, particularly in the fact of specifically designed industry standard tests [*i.e.*, ASTM F608, for measuring carpet cleaning performance]." (*See* Declaration of Jason Brown ("Brown Dec.") ¶ 16 & Ex. 9 (emphasis added).) At bottom, the two cases involve different advertisers, different advertisements, different performance criteria, different testing standards, different data, and different legal questions, debunking Euro-Pro's entire basis for transfer.

Moreover, Euro-Pro's request that this Court use its discretion to dismiss or stay this case ignores the unrebutted fact that Euro-Pro's advertising claims directly target Dyson, are literally false, go to a critical performance criterion for vacuum cleaners (*i.e.*, carpet cleaning), and are causing irreparable harm to Dyson at a most critical time of year. It is for that reason that Dyson seeks a preliminary injunction to stop Euro-Pro's false campaign. Although nowhere in Euro-Pro's supporting papers does it even suggest that its accused carpet cleaning performance claims are truthful or accurate, Euro-Pro's instant motion is designed to obtain on procedural grounds

2

that which it cannot obtain on the merits. Euro-Pro's decision to finally serve its months-old, defunct Massachusetts action last week and then move to transfer this action is an obvious attempt to delay the injunction it knows is warranted under the law.[1] This action is not related to the Massachusetts action and Euro-Pro should not get a free pass to continue its false advertising; Euro-Pro's motion should be denied.

## I.     FACTUAL BACKGROUND

### A.     The Claims In Massachusetts Are Different, And Essentially Resolved.

On September 26th, Euro-Pro filed a complaint against Dyson for false advertising. As noted in the very first paragraph under the aptly-titled "Nature of Action" section, Euro-Pro's claims against Dyson relate to *Dyson's* advertising statements regarding the suction power of its DC41 and DC65 vacuum cleaners. (Dkt. No. 19-1 Ex. 1 ("Mass. Compl.") ¶ 1.) Euro-Pro cited numerous Dyson advertisements in its complaint, all related to claims promoting suction power. (*Id.* ¶¶ 19-26.) As Euro-Pro explained in its Massachusetts complaint, ASTM F558 is the industry-accepted protocol for measuring a vacuum cleaner's maximum suction power. (*Id.* ¶ 29.) Per ASTM F558, suction is measured in terms of air watts.

It is undisputed that Dyson has the highest suction power at the cleaner head of any vacuum cleaner on the market—Euro-Pro's own testing submitted with the Massachusetts complaint proves that point. (Brown Dec. ¶ 7 & Exs. 1-2.) In fact, Dyson's suction power is so strong that, for a long period of time, Dyson's DC41 and DC65 machines offered two times more suction than any other upright vacuum cleaner on the market—a fact that Dyson advertised, and supported with substantial testing.

*First*, Dyson's claims substantiation team in the U.K. did extensive testing pursuant to

---

[1]  Notably, Euro-Pro has not agreed to discontinue its false advertising and indeed continued to blitz the marketplace with its misleading ads and infomercials after service, throughout the Thanksgiving holiday weekend, and through the filing of this Opposition.

ASTM F558 against the upright market. (Brown Dec. ¶ 5.) *Second*, Dyson had independent lab testing pursuant to F558 that proved that its machines had higher suction power at the cleaner head than any other upright vacuum cleaner (*id.*), a fact that was clearly and prominently disclosed in Dyson's marketing materials for over a year. (*See* Mass. Compl. ¶¶ 22, 24-26.) *Euro-Pro did not—and does not—challenge Dyson's F558 testing.* Instead, Euro-Pro complained that Dyson's claim was no longer accurate in light of the introduction of its latest vacuum. In support of that position, Euro-Pro filed with its verified Complaint numerous test reports reflecting F558 testing comparing its recently-released vacuum to Dyson's DC65. (Brown Dec. ¶ 7.) Euro-Pro did not submit any test reports conducted under any other ASTM standard, including F608. (*Id.*)

Critically, Dyson's "Twice the Suction" claim was *truthful, accurate, and supported by robust testing that went unchallenged by Euro-Pro.* (*Id.* ¶¶ 4-6.) There is no suggestion that Dyson ever introduced a false advertising claim; rather, the alleged issue in Massachusetts was that Euro-Pro's introduction of a new product in late-summer had (which had more suction power than prior models) rendered Dyson's otherwise-truthful claim outdated. In short, while Dyson no longer has two times more suction than every Euro-Pro vacuum, Dyson undisputedly still offers twice as much suction as all other Euro-Pro models, and more suction than the latest model. In other words, Euro-Pro's entire Massachusetts complaint centered on whether Dyson moved diligently enough to remove its now-stale "Twice the Suction" claim from the market.

As soon as Dyson confirmed through F558 testing that its "Twice the Suction" claim was no longer current, Dyson began immediately transitioning that claim out of the market.[2] (Brown

---

[2] Euro-Pro claims that Dyson has known for months that its "Twice the Suction" claims were false. Not so. While Euro-Pro may have said its new product ***was going to be released***, Dyson rightly was unwilling to simply take Euro-Pro at its word on product performance issues. Dyson got the new machine as soon as possible at the end of July, tested it internally and at an independent lab, confirmed

Dec. ¶¶ 10-11.)  And, just as important, Dyson kept Euro-Pro fully informed of the steps it was taking and the lengths it had gone to remove that claim from the market, providing detailed information *before* Euro-Pro ever filed suit in Massachusetts, let alone before it tactically served the Massachusetts complaint last week.  (*Id.* ¶ 13.)  Dyson has already removed its "twice the suction" claim from all print materials, television advertising, Dyson's website and online advertising.  Dyson has been actively removing retail displays featuring the claim, and is nearly done stickering over the claim on product packaging that sits on retailers' shelves.  (*Id.* ¶¶ 11-12.)  As of December 8, the transition is 80% done; Dyson expects to be complete its work by December 14.  (*Id.*)  In other words, in less than one week the Euro-Pro's dispute that was the basis of its Massachusetts complaint will be moot.

> **B.  The Advertising Claims At Issue In This Instant Case Relate To Carpet Cleaning Ability, And Are Factually Distinct From The Massachusetts Case.**

While the Massachusetts case concerns suction power, the dispute before this Court centers squarely *and solely* on carpet cleaning ability (specifically on Euro-Pro's claims that it "cleans carpets better than Dyson" under ASTM F608).  Suction power and carpet cleaning ability are two separate attributes.  In fact, Euro-Pro has repeatedly insisted that suction power is not relevant to carpet cleaning:  "*[Suction performance] does not tell the consumer anything relevant about how well the vacuum can clean*."  (Brown Dec. ¶ 16 & Ex. 9.)  Hoping to avoid a preliminary injunction, Euro-Pro sings a different tune now, disingenuously glossing over the different standards and arguing that the former Dyson suction power ads present the same issue as Euro-Pro's ongoing ads related to carpet cleaning.

In another example of its insincere effort to paint this case as related to the Massachusetts action, Euro-Pro mischaracterizes the allegations in Dyson's Complaint and Motion for

---

the claim had become stale, and began the process of removal.  (Brown Dec. ¶ 10.)

Preliminary Injunction. While Euro-Pro's advertisements (often lengthy infomercials making dozens of claims) sometimes tout suction as a separate benefit (just as they do other unrelated attributes like HEPA filtration or anti-allergen benefits), the amount of **suction is not the basis for Dyson's lawsuit**. Rather, this case and the accused claims relate **exclusively** to carpet cleaning ability, a point made clear in Dyson's preliminary injunction papers describing (while accurately quoting) the challenged ads. In its motion, Euro-Pro omits Dyson's emphasis and ignores the actual claim being challenged:

> In nearly every one of these ads, Euro Pro declares that the Shark Rotator cleans carpets better than the DC65. For instance, in its infomercial, Euro-Pro's CEO tells consumers "my new Rotator Powered Lift-Away has more suction and **deep-cleans carpets better than Dyson's best vacuum**" . . . .

(Dkt. No. 9 at 5 (emphasis in original).) Dyson's brief includes a screen capture of the claim being made in onscreen text that **only** references carpet cleaning, and not suction. (*Id*.)

As set forth in detail in Dyson's moving papers, carpet cleaning performance is measured pursuant to ASTM F608, so Dyson submitted extensive testing done pursuant to F608—and only F608—proving the falsity of Euro-Pro's claims. (Dkt. No. 10, Exs. 3-4, 7-10, 12-13 (testing exhibits to declaration of president of independent testing laboratory).) Dyson has not submitted any F558 testing in this matter, just as Euro-Pro submitted no F608 testing in the Massachusetts matter. As Euro-Pro has repeatedly acknowledged, **suction power measured per F558 testing has no bearing on carpet cleaning ability measured per F608**. (Brown Dec. ¶ 16.)

## II. DYSON'S CLAIMS SHOULD NOT BE DISMISSED BECAUSE THEY DO NOT TRIGGER THE FIRST-TO-FILE DOCTRINE AND ARE NOT COMPULSORY COUNTERCLAIMS.

The two cases involve different ads, different performance issues, and different legal analysis. There is no basis to dismiss or transfer this case to the District of Massachusetts.

A.      **The First-To-File Doctrine Does Not Apply.**

This is not the type of case where the first-to-file doctrine should be, or is, applied because this case is not duplicative of the Massachusetts case so there is no risk of inconsistent determinations, different remedies are sought, and justice requires that Dyson's request for expedited relief be heard here. Indeed, a court in this District denied a similar motion where the plaintiff sought expedited relief and the defendant had not served the "first filed" declaratory judgment action that involved the very same advertising statement. *See Schumacher Elec. Corp. v. Vector Prods., Inc.*, 286 F. Supp. 2d 953, 954 (N.D. Ill. 2003) (denying motion to dismiss second-filed false advertising action despite the fact that the defendant had previously filed an action for declaratory judgment regarding the same advertising statements where defendant failed to serve the first-filed complaint and plaintiff had moved for a preliminary injunction).

1.      **This Case Is Not Duplicative Of The Massachusetts Case, And There Is No Risk That The Two Courts Could Issue Inconsistent Rulings.**

According to the Seventh Circuit, the first-to-file doctrine applies only when the later filed case is "***duplicative of a parallel action*** already pending in another federal court." *Chrysler Corp. v. Marino*, 63 F.3d 574, 578 (7th Cir. 1995) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)) (emphasis added); *see also Humphrey v. United Healthcare Servs., Inc.*, No. 14 C 1157, 2014 WL 3511498, at *2 (N.D. Ill. July 16, 2014) ("first-filed" doctrine applies "when faced with ***two identical or nearly identical cases***") (emphasis added).[3]

Although Dyson agrees that Euro-Pro filed its unrelated lawsuit in Massachusetts before this suit was filed, the instant case is not duplicative of or parallel to the Massachusetts action because the claims and available relief are different. *Chrysler*, 63 F.3d at 578 ("A suit is only

---

[3] Euro-Pro focuses the Court's attention on *Preci-Dip, SA v. Tri-Star Elecs., Int'l, Inc.*, No. 08 C 4192, 2008 WL 5142401 (N.D. Ill. Dec. 4, 2008), for the proposition that the standard for determining the applicability of first-to-file is "substantial overlap," but *Preci-Dip* was quoting a Fifth Circuit decision that applied weaker language than the Seventh Circuit's "duplicative" or "nearly identical" standard.

duplicative if it involves the same claims, parties, and available relief.").  Unlike the cases Euro-Pro relies on, Dyson has not brought suit for declaratory judgment on the same advertisements challenged in Massachusetts, nor is Dyson even accusing Euro-Pro of making the same "Twice the Suction" claims with respect to its own vacuums.  Instead, this case involves different advertisements, different advertiser's actions, different performance criteria, and different testing.  *See Abbott Labs. v. CVS Pharmacies, Inc.*, No. 01 C 2772, 2001 WL 777060 (N.D. Ill. July 11, 2001) (finding that two cases were not sufficiently parallel to warrant dismissal even though a relationship existed between the cases); *cf. Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 975, 982 (7th Cir. 2010) (defining case where both parties served claims for breach of the same contract as "mirror-image lawsuit," and upholding application of first-to-file because they were "identical" cases).[4]

Importantly, the relief sought in the two cases also is different.  Dyson asks this Court to enjoin Euro-Pro's ongoing false claims, whereas the only relief available to Euro-Pro in the Massachusetts action would be compensation for whatever harm it can prove it suffered during the short period between Euro-Pro's release of the new Shark vacuum and Dyson's removal of the "Twice the Suction" claim from the market.  These disparate forms of relief contrast starkly with the cases Euro-Pro cites, which involve one party seeking a finding of infringement while the other seeks a declaration of non-infringement of the same right.  *Cf., e.g., Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929 (N.D. Ill. 2006); *Preci-Dip*, 2008 WL 5142401.

Moreover, there is no risk of conflicting decisions because the ads, ad claims, and testing are entirely distinct.  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012) ("The 'first-to-

---

[4] Even in the instance of parallel cases, there is no requirement that second-filed cases be dismissed or transferred; rather, courts may allow such actions to proceed in the interest of justice.  *Schumacher*, 286 F. Supp. 2d at 954 ("The Seventh Circuit, however, does not require that we rigidly adhere to [the first-to-file] rule, instead holding that, in the interests of justice the second-filed action may proceed.").

file' rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency.").  In the instant case, this Court will consider the falsity of Euro-Pro's carpet cleaning claims based on Dyson's extensive testing under F608 that proves the DC65 cleans carpets better than the Shark Rotator Powered Lift-Away.  In Massachusetts, the court there will only have to determine whether Dyson acted in good faith in removing the "Twice the Suction" claim, and perhaps whether Euro-Pro is somehow entitled to damages during the short time it took Dyson to transition that claim out of the market.  Unlike this case, where F608 testing is critical, it is highly unlikely *any* testing will be at issue in Massachusetts because Euro-Pro did not challenge Dyson's original substantiation and Dyson does not dispute that its claim has become stale.[5]  Thus, there is no risk that this Court's analysis of whether F608 testing supports or refutes Euro-Pro's carpet cleaning claims will conflict with the issues in Massachusetts.[6]

### 2. The First-To-File Doctrine Is Not Applicable Because Dyson Is Entitled To Be Heard On Its Motion For Expedited Relief.

Even for matters that are nearly identical, the Seventh Circuit "has never adhered to a rigid 'first to file' rule," instead holding that, in the interests of justice the second-filed action may proceed.  *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987).  Courts in this District have repeatedly found that the filing of a preliminary injunction motion in the second-filed case is a reason to deny a motion to transfer or dismiss for the first-filed action.  *See Miller v. SKF USA, Inc.*, No. 10 C 6191, 2010 WL 5463809, at *6-7 (N.D. Ill.

---

[5]  Even if testing becomes relevant in the Massachusetts case, the testing in one case will not be at issue in the other because the advertising claims in each case are based on distinct, unrelated testing—as Euro-Pro itself has insisted (Brown Dec. ¶ 16)—so there is no risk of inconsistent rulings.

[6]  Euro-Pro's passing reference to unclean hands is a red herring as well, as Dyson's "Twice the Suction" ad claim cannot be the basis of that affirmative defense in this case.  *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) (plaintiff's inappropriate advertising "does not excuse [defendant's] current deceptive and misleading advertisements to the public"); *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663 (W.D. Wash. 2009) (striking unclean hands defense; plaintiff's allegedly false advertising about crankset of plaintiff's bicycles was insufficiently related to claim that defendant made different false statements about properties of crankset in plaintiff's bicycles).

Dec. 29, 2010) (favoring second-filed action where plaintiff in that case "required immediate resolution"); *Galileo Int'l P'ship v. Global Village Comm., Inc.*, No. 96 C 3554, 1996 WL 452273, at *3 (N.D. Ill. Aug. 8, 1996) (second-filed action's preliminary injunction "calls for an expedited decision" and thus weighed in favor of denying motion to dismiss); *Schumacher*, 286 F. Supp. 2d at 954 (denying motion to dismiss second filed case; plaintiff had right to have preliminary injunction motion heard). Accordingly, the fact that Dyson has moved for a preliminary injunction strongly favors allowing Dyson's case to proceed before this Court.

Moreover, Euro-Pro failed to serve its "first-filed" complaint for nearly three months, and only filed it after Dyson filed the instant Complaint. Euro-Pro offers no explanation for why it filed now, other than the obvious tactical attempt to gin up a basis for a transfer motion. In fact, there is no indication that Euro-Pro would have ever acted on the Massachusetts case but for Dyson challenging Euro-Pro's carpet cleaning superiority claims, as Euro-Pro talked with Dyson for several weeks regarding Dyson's transition plan.[7] These facts all support denial of Euro-Pro's motion. *Schumacher*, 286 F. Supp. 2d at 954-55 (denying motion to transfer second-filed false advertising action where defendant gave no indication in conversations with plaintiff that it intended to pursue first-filed action and served first complaint after being served in second case).

As this Court reasoned in *Galileo*, "a motion for preliminary injunction calls for an expedited decision and, under the present circumstances, cannot await refiling in another court."

---

[7]  Indeed, insofar as courts often deny rigid adherence to first-filed transfers where a party seeks to obtain a tactical advantage through procedural gamesmanship, Euro-Pro's procedural maneuvering here is yet another basis upon which its motion should be denied. *Cf. Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05 C 4811, 2005 WL 3601936, at *3 (N.D. Ill. Oct. 31, 2005) (denying motion to dismiss or transfer second-filed suit where "defendants were engaging in tactical strategies similar to the maneuvering the Declaratory Judgment Act was designed to end" by advancing first suit filed before negotiations to resolve the dispute terminated). Relatedly, this Court has noted that "the trivial nature of the original suit compared to the latter one" can be grounds to reject the first-to-file doctrine. *Alchemist Jet Air, LLC v. Century Jets, Aviation, LLC*, No. 08 C 5386, 2009 WL 1657570, at *2 (N.D. Ill. June 12, 2009) (denying motion to enjoin second-filed action).

10

*Galileo*, 1996 WL 452273, at *3; *see also Schumacher*, 286 F. Supp. 2d at 955-56 (finding plaintiff in second-filed action "has the right to a ruling on its motion for a preliminary injunction in the forum that it chooses."). Similarly, Dyson would be prejudiced if it was forced to refile in Massachusetts, as Euro-Pro's aggressive false claims would be permitted to continue even longer, including through the critical holiday shopping season. The fact that Euro-Pro barely mentions Dyson's motion and the impending preliminary injunction hearing only highlights this point and shows that Euro-Pro realizes the critical importance of expedited relief here.

3.  **Euro-Pro Has Not Cited A Single Case That Supports Application Of The First-To-File Doctrine In This Case.**

Notably, Euro-Pro does not cite a single case that supports application of the first-to-file doctrine as a basis to dismiss this case. Instead, Euro-Pro relies on cases involving the same contractual agreement, the same patents, or other mirror-image suits.[8]

The instant action is not a mirror lawsuit, this is not a declaratory judgment action, and there is no single contract—or more appropriately, advertisement—to analyze. Euro-Pro's generalization that "courts routinely dismiss second-filed actions" (Dkt. No. 19 at 6)—like its factual assertions—glosses over the details of its cited cases.

---

[8] *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 888 (7th Cir. 2012) (both suits were Title VII class actions challenging same employment practices); *Pfizer, Inc. v. Apotex, Inc.*, 640 F. Supp. 2d 1006 (N.D. Ill. 2009) (plaintiff brought identical cases against same defendant in two different courts to avoid losing jurisdiction over its claim); *Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 34 F. Supp. 2d 1092 (N.D. Ill. 1999) (both parties sought review of same pension arbitration award); *Schiller v. Packaging Store, Inc.*, 690 F. Supp. 711 (N.D. Ill. 1988) (both actions claimed the other party breached the same franchise agreement); *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983) (both actions alleged defendant engaged in same price fixing actions and sought same relief); *Preci-Dip*, 2008 WL 5142401 (first action for patent infringement and second action for declaratory judgment of non-infringement of same patent); *Patel v. Am. Tel. & Tel., Inc.*, No. 93 C 117, 1993 WL 384569 (N.D. Ill. Sept. 27, 1993) (parties sued for breach of same contract).

**B.**   **Dyson's Claims Are Not Compulsory Counterclaims.**

Euro-Pro also argues that Dyson's claims involving Euro-Pro's ads about carpet cleaning are somehow compulsory counterclaims to a suit involving Dyson's ads about suction power. This is incorrect and entirely unsupported.  Compulsory counterclaims "*arise out of the same transaction or occurrence*" as the opposing party's claim.  Fed. R. Civ. P. 13(a) (emphasis added); *see also Burlington Northern R. Co. v. Strong*, 907 F.2d 707, 710-11 (7th Cir. 1990) (affirming finding that plaintiff railroad's claim for recoupment of benefits paid to defendant employee was not compulsory counterclaim to employee's claim for benefits against railroad). As this Court has previously found, marketing claims made in different ads are not compulsory counterclaims because they do not arise under the same transaction or occurrence, as Rule 13(a) requires.  *Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*, No. 95 C 7255, 1997 WL 370204, at *11 (N.D. Ill. June 27, 1997), *aff'd*, 152 F.3d 947 (Fed. Cir. 1998) (unpublished).

In *Minuteman*, the plaintiff had previously brought a false advertising case in a prior suit against the defendant, challenging statements the defendant was making with respect to the plaintiff's products.  That case settled.  In a second action, the plaintiff brought suit for patent infringement against the same defendant, and the defendant asserted a counterclaim for false advertising, this time challenging the *plaintiff's* allegedly false advertising statements.  The plaintiff moved to dismiss the false advertising counterclaim on the ground that it was a compulsory counterclaim to the initial false advertising matter.  The Court disagreed and allowed the defendant's counterclaim to proceed, explaining:

> Although [plaintiff] Minuteman's [prior] claim and [defendant] C-Vac's present counterclaim both allege false advertising, *the claims do not arise out of the same transaction or occurrence*.  Minuteman's [prior] claim involved the performance of C-Vac filters, while C-Vac's present claim involves the performance of Minuteman filters.  Moreover, Minuteman has not shown that the specifications or qualities at issue in the [prior] claim are the same as those presently at issue.  Accordingly, C-Vac's claims are not barred under Rule 13(a).

*Id.* (emphasis added). Similarly here, the claims do not arise out of the same transaction or occurrence: Dyson's discontinued marketing claim involved Dyson's vacuum cleaners' suction power, while Euro-Pro's false advertising claims involve the purported carpet cleaning ability of Euro-Pro's new vacuum. As in *Minuteman*, these specifications and qualities of vacuum performance are not the same, as Euro-Pro has repeatedly argued. (Brown Dec. ¶ 16.) The mere fact that both these cases involve the Lanham Act does not satisfy Rule 13(a).[9]

The cases Euro-Pro cites are, again, inapposite because they *require a common finding*. For instance, the counterclaim in *Black v. Hollinger Int'l, Inc.*, No. 04 C 2454, 2004 WL 2496590 (N.D. Ill. Nov. 3, 2004), was compulsory to the original claim because both required the court to determine whether the plaintiff breached its fiduciary duty to the defendant.[10] No such common finding is required here because the different advertisements promote different characteristics that are based on different testing performed under different standards. Neither party's legal claim is dependent on a finding of the truth or falsity of the other party's advertising or the accuracy of its testing. Euro-Pro's argument that Dyson's claims in this case require a finding regarding suction is wrong—Dyson has not made any accusations against Euro-Pro's suction claims in this case.[11]

---

[9] Moreover, Rule 13(a) does not automatically bar a party from bringing an independent action it could have brought as a compulsory counterclaim in a pending action; rather, "Rule 13(a) operates under the doctrine of *res judicata* to bar a party from suing on a claim that it should have brought as a compulsory counterclaim in a prior action." *New SVE, Inc. v. UAV Corp.*, No. 03 C 578, 2003 WL 1826127, at *1 (N.D. Ill. Apr. 8, 2003) (denying motion to dismiss or transfer second-filed case).

[10] Euro-Pro cites other compulsory counterclaim decisions that are similarly distinguishable. *See, e.g.*, *Board of Regents of Univ. of Wisc. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448 (7th Cir. 2011) (claim and counterclaim both hinged on likelihood of confusion concerning the same trademark); *Kim*, 412 F. Supp. 2d at 929 (claim for patent infringement in second suit was compulsory counterclaim in first suit for declaratory judgment of noninfringement of same patent).

[11] Euro-Pro's reference to Dyson's possible assertion of *permissive* counterclaims in the Massachusetts action is not an admission of anything. (*See* Dkt. No. 19 at 11-12.) In context, that statement simply referred to the numerous different false and misleading claims that Euro-Pro continues to make in the market despite *prior* NAD recommendations that Euro-Pro stop. (Brown Dec. ¶ 13 & n.2.) Nor is that

## III.    <u>TRANSFER UNDER 28 U.S.C. § 1404(A) IS NOT WARRANTED.</u>

As a last ditch effort, Euro-Pro also asks this Court to transfer this case to the District of Massachusetts under Section 1404(a), which requires Euro-Pro to prove that transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (affirming denial of transfer under Section 1404(a)); *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1170 (N.D. Ill. 1995) (denying transfer under Section 1404(a)). Where convenience does not favor either side, courts typically do not disturb the plaintiff's chosen forum. *Gaither Tool Co. v. Tire Serv. Equip. Mfg., Inc.*, No. 96 C 8094, 1997 WL 403583, at *7 (N.D. Ill. July 16, 1997). Here, none of the factors favor transfer, and Dyson is entitled to have its case heard in this District.[12]

***First***, while Massachusetts may be more convenient for Euro-Pro, this District is more convenient for Dyson, as this is where Dyson is located and its employees reside. ***Second***, the convenience of witnesses favors the case remaining here. Dyson's witnesses with facts pertinent to this case (*e.g.,* knowledge of F608 testing, harm to Dyson, and marketing issues) are here, with the exception of its expert, who is in nearby Michigan. And there is not significant overlap (if any) in the witnesses in this action and the Massachusetts case. While Euro-Pro argues that the same people who performed the suction testing at issue in the Massachusetts case are the same people who performed the carpet cleaning tests in the Illinois case, this misses the point. Putting aside that Dyson would likely have different witnesses from different departments to discuss its F558 testing (Brown Dec. ¶ 20), testing witnesses are not likely relevant because *the*

---

statement a concession that the legal claims Dyson asserts here with respect to Euro-Pro's new false advertising somehow are *compulsory* counterclaims in the Massachusetts action.

[12] The mere existence of the Massachusetts action, therefore, does not meaningfully affect the transfer analysis. *Gregg Commc'ns Sys., Inc. v. Am. Tel. & Tel. Co.*, 575 F. Supp. 1269, 1270 (N.D. Ill. 1984) ("The pendency of a related case in the transferee district ***does not compel transfer*** under 28 U.S.C. § 1404(a). To the contrary, this factor, standing alone, ***is entitled to little weight***.") (emphasis added).

*F558 testing is not in dispute in Massachusetts*—Euro-Pro knows Dyson's claims were substantiated before the change in the market (in fact, Euro-Pro has had Dyson's F558 testing for months, and not taken issue with it), and Dyson does not dispute that Euro-Pro's new machine renders Dyson's prior claim stale. The only real issue in Massachusetts would be Dyson's actions in removing the claim. Persons with knowledge on those removal efforts have no bearing on the matter before this Court. (*Id.* ¶¶ 19-20.)

**Finally**, the interest of justice requires denial of transfer. Dyson comes to this Court seeking immediate relief against Euro-Pro's widespread and false advertising campaign. With every day these claims remain in the market place, Dyson is harmed irreparably. Euro-Pro has had Dyson's moving papers for two weeks, but has done nothing to address them or defend its advertising claims. Indeed, its effort to reanimate a defunct dispute by finally serving its September complaint last week suggests tactical gamesmanship and an effort not to defend its claims, but to instead deprive Dyson of a meaningful opportunity for expedited relief. Transferring this case to Massachusetts would only delay the resolution of Dyson's already-pending motion.[13] The law supports this Court retaining this case and entering Dyson's requested injunction. *Schumacher*, 286 F. Supp. 2d at 955-56 (plaintiff in second-filed suit "has the right to a ruling on its motion for a preliminary injunction in the forum that it chooses").

IV.    **CONCLUSION**

For the foregoing reasons, Dyson respectfully requests that this Court deny Euro-Pro's motion to dismiss, transfer, or stay this matter.

---

[13] Dyson opposes Euro-Pro's alternative request to stay this case pending the outcome in the unrelated Massachusetts action for the same reasons. The Massachusetts case has no bearing on this suit and cannot be used as a hook to allow Euro-Pro to continue its false advertising campaign.

Dated:  December 8, 2014            Respectfully submitted,

By: */s/ Gregg F. LoCascio, P.C.*
     Robin A. McCue (IL Bar No. 6256551)
     rmccue@kirkland.com
     Ian J. Block (IL Bar No. 6299117)
     ian.block@kirkland.com
     Susan L. Tanaka (IL Bar No. 6314120)
     susan.tanaka@kirkland.com
     KIRKLAND & ELLIS LLP
     300 North LaSalle
     Chicago, Illinois 60654
     Telephone:  (312) 862-2000
     Facsimile:  (312) 862-2200

     Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
     glocascio@kirkland.com
     KIRKLAND & ELLIS LLP
     655 Fifteenth Street, N.W.
     Washington, D.C. 20005-5793
     Telephone:  (202) 879-5000
     Facsimile:  (202) 879-5200

     *Counsel for Plaintiff Dyson, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2014, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date. I further certify that a true and correct courtesy copy of the foregoing document also was served by electronic mail this date on:

> Roger A. Colaizzi (rcolaizzi@venable.com)
> VENABLE LLP
> 575 7th Street, NW
> Washington, D.C. 20004
>
> Randall K. Miller (RKMiller@Venable.com)
> VENABLE LLP
> 8010 Towers Crescent Drive
> Suite 300
> Tysons Corner, Virginia 22182

By: _/s/ Gregg F. LoCascio, P.C._