**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DYSON, INC., )<br><br>*Plaintiff*, )<br><br>v. )<br><br>EURO-PRO OPERATING LLC and<br>EURO-PRO SALES COMPANY, )<br><br>*Defendants*. ) | Case No.: 1:14-cv-09442<br><br>Judge: Honorable Joan B. Gottschall<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF DYSON, INC.'S OPPOSITION TO DEFENDANTS
EURO-PRO OPERATING LLC AND EURO-PRO SALES COMPANY'S
<u>SECOND MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I.     **Euro-Pro's Second Motion To Dismiss Is Procedurally Improper And Should Be Denied.** ..................................................................................................................... 2

II.    **Euro-Pro's Motion To Dismiss Improperly Asks This Court To Engage In Fact Finding** ............................................................................................................... 4

     A.    Euro-Pro's New Instruction Manual Did Not Exist At The Time Dyson Filed Its Complaint And Cannot Be Considered. .................................... 6

     B.    Euro-Pro's Arguments Regarding The "Fit" Of Dyson's Testing Go Directly To Merits Of Dyson's Claims................................................... 9

     C.    Euro-Pro's Criticisms Of IBR's Testing Are Not A Basis For Dismissal............ 10

III.   **Dyson's Complaint Satisfies Rule 9(b) And The Elements Of False Advertising Under The Lanham Act**................................................................... 11

     A.    Dyson's Complaint Sufficiently Pleads A False Advertising Claim. ................... 11

     B.    The Seventh Circuit Does Not Require Dyson To Plead Its Legal Theories........ 13

IV.   **Conclusion** ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bankers Trust Co. v. Old Republic Ins. Co.*,
   959 F.2d 677 (7th Cir. 1992)................................................................................. 13

*BASF Corp. v. Old World Trading Co.*,
   41 F.3d 1081 (7th Cir. 1994)................................................................................. 15

*Berol Corp. v. BIC Corp.*,
   No. 02 C 0559, 2002 WL 1466829 (N.D. Ill. July 8, 2002) ...................................... 4

*Carlson v. CSX Transp., Inc.*,
   758 F.3d 819 (7th Cir. 2014)................................................................................... 5

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997).................................................................................... 7

*Culp v. Astrue*,
   No. EDCV07-504 JC, 2008 WL 2620381 (C.D. Cal. June 30, 2008) ........................ 8

*DeVry Inc. v. Univ. of Med. & Health Sciences-St. Kitts*,
   No. 08CV3280, 2009 WL 260950 (N.D. Ill. Feb. 3, 2009) ...................................... 10

*Dubois v. Macy's Retail Holdings, Inc.*,
   No. 11 CV 4904 NGG LB, 2012 WL 4060739 (E.D.N.Y. Aug. 17, 2012)................... 7

*Ennenga v. Starns,*
   677 F.3d 766 (7th Cir. 2012).................................................................................... 3

*Fed. Deposit Ins. Corp. v. Giancola*,
   No. 13 C 3230, 2014 WL 1056643 (N.D. Ill. Mar. 19, 2014) ................................... 8

*Ferris Mfg. Corp. v. Carr*,
   No. 14 C 04663, 2015 WL 279355 (N.D. Ill. Jan. 21, 2015)................................... 12

*Foboha GmbH v. Gram Tech., Inc.*,
   No. 08 C 0969, 2008 WL 4619795 (N.D. Ill. Oct. 15, 2008) .................................... 5

*Forest River, Inc. v. Heartland Recreational Vehicles, LLC*,
   No. 3:09-CV-302 JVB, 2010 WL 2674540 (N.D. Ind. June 29, 2010) .................... 14

*GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc.*,
   81 F. Supp. 2d 1003 (N.D. Cal. 1999) ..................................................................... 8

*Hot Wax, Inc. v. Grace-Lee Products, Inc.*,
   No. 97 C 6882, 1998 WL 664945 (N.D. Ill. Sept. 15, 1998)............................. 11, 13

*Hughes v. Accretive Health, Inc.*,
No. 13 CV 3688, 2014 WL 4784082 (N.D. Ill. Sept. 25, 2014) ................................. 13

*In re Neopharm, Inc. Sec. Litig.*,
No. 02 C 2976, 2003 WL 262369 (N.D. Ill. Feb. 7, 2003) ........................................ 8

*Jackson v. Illinois Bell Telephone Co.*,
No. 01 C 8001, 2002 WL 1466796 (N.D. Ill. July 8, 2002) ..................................... 5

*Junhao Su v. E. Illinois Univ.*,
565 F. App'x 520 (7th Cir. 2014) ............................................................................ 14

*King v. Kramer*,
763 F.3d 635 (7th Cir. 2014) ................................................................................... 14

*KJ Korea, Inc. v. Health Korea, Inc.*,
No. 13 CV 6902, 2014 WL 4344307 (N.D. Ill. Sept. 2, 2014) ............................... 5

*Kramer v. Am. Bank & Trust Co.*, N.A.,
No. 11 C 8758, 2014 WL 3638852 (N.D. Ill. July 23, 2014) .................................. 3

*Levenstein v. Salafsky*,
164 F.3d 345 (7th Cir. 1998) ................................................................................... 8

*McCready v. eBay, Inc.*,
453 F.3d 882 (7th Cir. 2006) ................................................................................... 5

*Medallion Products, Inc. v. H.C.T.V., Inc.*,
No. 06 C 2597, 2007 WL 1022010 (N.D. Ill. Mar. 29, 2007) ............................... 11

*Morningware, Inc. v. Hearthware Home Products, Inc.*,
673 F. Supp. 2d 630 (N.D. Ill. 2009) ..................................................................... 10

*Morningware, Inc. v. Hearthware Home Products, Inc.*,
No. 09 C 4348, 2012 WL 3835825 (N.D. Ill. Sept. 4, 2012) ................................. 14

*Morrison v. YTB Int'l, Inc.*,
649 F.3d 533 (7th Cir. 2011) ................................................................................... 5

*Mugnai v. Kirk Corp.*,
843 F. Supp. 2d 858 (N.D. Ill. 2012) ...................................................................... 8

*Nautilus Ins. Co. v. Dubin & Associates, Inc.*,
No. 11 C 1251, 2011 WL 6887122 (N.D. Ill. Dec. 29, 2011) ................................. 3

*Newton v. Penguin/Berkley Pub. USA*,
No. 13 CIV. 1283 CM, 2014 WL 61232 (S.D.N.Y. Jan. 6, 2014) ......................... 7

*Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*,
 No. 10 C 6682, 2011 WL 2182106 (N.D. Ill. June 2, 2011) ...................................................... 3

*Semitekol v. Monaco Coach Corp.*,
 582 F. Supp. 2d 1009 (N.D. Ill. 2008) ..................................................................................... 5

*Snyder ex rel. Snyder v. Sec'y of Dep't of Health & Human Servs.*,
 No. 01-162V, 2009 WL 332044 (Fed. Cl. Feb. 12, 2009) ......................................................... 8

*U.S. Equal Employment Opportunity Comm'n v. Mont Brook, Inc.*,
 No. 13 CV 6799, 2014 WL 2119862 (N.D. Ill. May 20, 2014) .............................................. 10

*U.S. Fid. & Guar. Co. v. Jepsen*,
 No. 90 C 6931, 1991 WL 249706 (N.D. Ill. Nov. 14, 1991) ..................................................... 3

*United States v. B.R. MacKay & Sons, Inc.*,
 No. 85 C 6925, 1986 WL 13717 (N.D. Ill. Nov. 28, 1986) ...................................................... 4

*Vasarhelyi v. Vasarhelyi*,
 No. 09 C 2440, 2009 WL 2973069 (N.D. Ill. Sept. 10, 2009) ................................................ 12

*Venetian Casino Resort, L.L.C. v. E.E.O.C.*,
 409 F.3d 359 (D.C. Cir. 2005) ................................................................................................ 8

*Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*,
 247 F. Supp. 2d 987 (N.D. Ill. 2002) ....................................................................................... 4

**Rules**

FED. R. CIV. P. 12 ........................................................................................................... passim

FED. R. CIV. P. 12(b)(6) .................................................................................................. passim

FED. R. CIV. P. 9(b) ............................................................................................... 2, 11, 12, 13

Euro-Pro's second motion to dismiss is another ill-conceived tactic to avoid full discovery and a final determination on the merits of Dyson's false advertising claim. After attempting—and failing—to dismiss the same Complaint in December, and subsequently bombarding this Court with multiple repetitive filings on Dyson's substantive legal claim, Euro-Pro filed this *second* motion to dismiss. Euro-Pro's motion merely repackages those same substantive arguments in a different (albeit improper) procedural vehicle. This second motion to dismiss is both procedurally and substantively inappropriate under Rule 12 and should be denied.

***First,*** Euro-Pro's current motion to dismiss is its second such motion, and successive motions to dismiss are prohibited under Rule 12(g)(2): "[A] party that makes a motion under this rule must not make another motion raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g)(2). Euro-Pro filed its first motion to dismiss on December 4, 2014, invoking Rule 12 as a basis for that motion. (*See* Dkt. No. 18 at 1 ("Pursuant to F.R.C.P. 12, 13(a), 65, . . . [Euro-Pro] hereby move[s] to dismiss, or in the alternative, for transfer or stay").) Now, Euro-Pro is making another motion under Rule 12, raising arguments about purported defects in Dyson's Complaint and Dyson's supposed failure to state a claim, all of which were available to Euro-Pro when it filed its first motion. Indeed, the Complaint that Euro-Pro attacks in the instant motion is the ***same operative Complaint*** Euro-Pro tried to dismiss with its first motion. Rule 12(g) forbids this attempted second bite at the apple and offers a sufficient standalone basis for the Court to deny Euro-Pro's motion.

***Second,*** even if this Court were to consider Euro-Pro's second motion to dismiss, the motion should be denied because it ignores the applicable standard and asks this Court to rule on numerous factual issues and base the decision on evidence outside the four corners of the pleadings. For example, although Dyson's Complaint references the instruction manual that was

packaged in the Shark Rotator Powered Lift-Away at the time the Complaint was filed, Euro-Pro asks this Court to dismiss the entire lawsuit because the language in its current instruction manual—which was only created and posted online months after the Complaint was filed—is different than the operative manual at the time the Complaint was filed. Euro-Pro also *yet again* argues that the IBR testing attached to Dyson's Complaint does not "fit" Euro-Pro's advertising statements. This argument asks the Court to consider evidence contrary to Dyson's well-pled allegations that (1) IBR adjusted the vacuum settings based on Euro-Pro's instruction manual and ASTM F608's directive; and (2) Euro-Pro's "Carpet/Low Pile" disclaimer is a deviation from Euro-Pro's instruction manual and ASTM F608. At the motion to dismiss stage, where the Court must accept all of Dyson's well-pled facts as true and may not look outside the four corners of the Complaint, it is improper for Euro-Pro to seek dismissal based on purported facts and evidence that contradict Dyson's Complaint. In fact, while styled as a Rule 12(b)(6) motion, Euro-Pro's actual motion is about as far as one can get from the basic tenets of Rule 12(b)(6).

**Third,** Dyson's Complaint is sufficient under Rule 9(b)'s pleading standard; it pleads sufficient facts for its false advertising claim and, though not required under the law, identifies both implied falsity and establishment claim legal theories. In fact, in its order denying Euro-Pro's first motion to dismiss, this Court acknowledged that Dyson's Complaint provides "a thorough explanation of the alleged factual basis" for Dyson's legal claim. (Dkt. No. 65 at 9.) As such, Euro-Pro's Motion should be denied.

## I. EURO-PRO'S SECOND MOTION TO DISMISS IS PROCEDURALLY IMPROPER AND SHOULD BE DENIED.

Euro-Pro's second motion to dismiss is a procedurally improper successive Rule 12 motion that should be rejected. Rule 12(g) expressly precludes a defendant from bringing successive pre-answer motions to dismiss raising arguments that the defendant failed to raise at

the first available opportunity.  FED. R. CIV. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."); *see U.S. Fid. & Guar. Co. v. Jepsen*, No. 90 C 6931, 1991 WL 249706, at *2 (N.D. Ill. Nov. 14, 1991) ("Thus, under Rule 12(g), a party who raises a defense by motion prior to an answer must raise all possible defenses in a single motion. Omitted defenses cannot be raised in a second pre-answer motion.").  The purpose of Rule 12(g)(2) is "to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground."  *Kramer v. Am. Bank & Trust Co.*, N.A., No. 11 C 8758, 2014 WL 3638852, at *2 (N.D. Ill. July 23, 2014) (denying motion to dismiss under Rule 12(g) where first motion to dismiss was denied on other grounds) (quoting *Ennenga v. Starns,* 677 F.3d 766, 773 (7th Cir. 2012)); *see also Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*, No. 10 C 6682, 2011 WL 2182106, at *4 (N.D. Ill. June 2, 2011) ("[D]efendants' filing of successive motions to dismiss frustrates Rule 12's aims of simplifying and expediting the adjudication of pre-trial motions.").  Particularly where the parties and the Court have already expended substantial resources presenting and deciding Dyson's motion for preliminary injunction, Euro-Pro's second motion to dismiss seeks to do exactly what Rule 12(g)(2) is designed to prevent: create piecemeal litigation by repeatedly attacking the same Complaint on different bases.

This is not a case where Dyson amended its Complaint, and Euro-Pro's second motion attacks a new operative pleading.  To the contrary, Euro-Pro challenges the ***same complaint*** that it challenged in December.  *Cf. Nautilus Ins. Co. v. Dubin & Associates, Inc.*, No. 11 C 1251, 2011 WL 6887122, at *2 (N.D. Ill. Dec. 29, 2011) ("[C]ourts have held that when an amended complaint contains new matters, the defendant may bring a second Rule 12 motion to object only

to those new allegations."). The arguments presented in the instant motion were available to Euro-Pro in December. In fact, Euro-Pro knew that Dyson accused its "tests prove" claim as being both false and misleading per the express allegations in the Complaint, and it had Dyson's testing in support of that challenge along with the settings used to perform that testing. If Euro-Pro believed Dyson's Complaint was legally deficient, or that the tests did not "fit" the ad claim as a matter of law based on Dyson's pleading, then Euro-Pro should have raised those issues in its first motion.[1] Euro-Pro does not—and cannot—identify a single legally or factually sound basis for contravening Rule 12(g)(2). Euro-Pro's second motion is expressly precluded under Rule 12(g) and should be denied. *See Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 999 (N.D. Ill. 2002) ("Under Rule 12(g), however, the defendants may not assert the defense by a second pre-answer motion because Rule 12(g) expressly precludes the defendant from doing so.").

## II.    EURO-PRO'S MOTION TO DISMISS IMPROPERLY ASKS THIS COURT TO ENGAGE IN FACT FINDING.

Notwithstanding that Euro-Pro's motion is procedurally improper under Rule 12(g), Euro-Pro's motion raises arguments that require the Court to consider evidence outside the pleadings, make factual determinations, and decide questions that go directly to the merits of the case, a flaw this Court already noted: "Euro-Pro's motion to dismiss . . . ask[s] the court to dismiss Dyson's claims pursuant to Rule 12(b)(6) *based on evidence presented at the preliminary injunction hearing*." (*See* Dkt. No. 113 at 1 (emphasis added).) That is the

---

[1]    Euro-Pro's first motion to dismiss explicitly invoked Rule 12. Nonetheless, to the extent Euro-Pro tries to argue that its first motion somehow was not brought pursuant to Rule 12 because it was a motion to dismiss *or transfer*, it should nonetheless be considered a Rule 12 motion. *See Berol Corp. v. BIC Corp.*, No. 02 C 0559, 2002 WL 1466829, at *1 (N.D. Ill. July 8, 2002) ("[A] motion for transfer pursuant to Section 1404(a) is analogous to a Rule 12(b)(3) motion to change venue, and for this reason the 1404(a) motion has been viewed as a Rule 12 motion for purposes of waiver under Rule 12(g).") (quoting *United States v. B.R. MacKay & Sons, Inc*., No. 85 C 6925, 1986 WL 13717, at *6 (N.D. Ill. Nov. 28, 1986)).

antithesis of a Rule 12(b)(6) motion.

Indeed, it is well-established that "with respect to a motion under Rule 12(b)(6), the court can only consider the allegations made within the four corners of the complaint." *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1023 (N.D. Ill. 2008) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006)); *see Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) (reversing district court's grant of motion to dismiss and holding that district court was not entitled to take evidence or make findings of fact on a motion to dismiss the complaint); *Jackson v. Illinois Bell Telephone Co.*, No. 01 C 8001, 2002 WL 1466796, at *2 (N.D. Ill. July 8, 2002) ("[M]atters outside the pleadings cannot be considered when deciding a Rule 12(b)(6) motion to dismiss."). Equally established is the principle that, on a motion to dismiss, a court "must construe [the complaint] in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (reversing district court's grant of motion to dismiss). To that end, the Court may not consider facts or evidence that are outside or contradict the plaintiff's complaint because "[t]he purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits." *Foboha GmbH v. Gram Tech., Inc.*, No. 08 C 0969, 2008 WL 4619795, at *2 (N.D. Ill. Oct. 15, 2008) (denying motion to dismiss false advertising claim); *see KJ Korea, Inc. v. Health Korea, Inc.*, No. 13 CV 6902, 2014 WL 4344307, at *3, *6 (N.D. Ill. Sept. 2, 2014) (denying motion to dismiss trademark infringement claim, and finding that defendants' factual arguments were "premature" and "[did] not warrant dismissal under Rule 12(b)(6)" because "the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor").

In a fairly transparent effort to avoid answering the Complaint and forestall discovery, Euro-Pro has taken its repetitive arguments even further this time, styling those same merits issues as a Rule 12 motion in complete disregard for the law and governing standard. Euro-Pro's motion requires this Court to engage in intensive fact-finding regarding IBR's testing and the setting to use for ASTM testing, and to consider evidence that is contrary to what is pled in Dyson's Complaint and that did not exist at the time the Complaint was filed; it must be denied.

**A.**   **Euro-Pro's New Instruction Manual Did Not Exist At The Time Dyson Filed Its Complaint And Cannot Be Considered.**

Euro-Pro argues that Dyson's Complaint should be dismissed because the manual referenced in Dyson's Complaint is "obsolete" and has been "superseded" and instead urges this Court to look to its updated manual. To be clear, Dyson's Complaint pleads facts related to the instruction manual that was inside the Shark Rotator Powered Lift-Away box and available to consumers at the time Dyson filed its Complaint,[2] and is still in boxes today.[3] (Compl. ¶¶ 28, 30, 32.) Now, Euro-Pro argues that the Court should disregard the instruction manual referenced in the Complaint, which Euro-Pro distributed to consumers for ***at least*** seven months—from July

---

[2]   Euro-Pro asserts that its advertisements prove that the instruction manual cited in Dyson's Complaint was "obviously obsolete" at the time it was filed because Euro-Pro's disclaimer specified that the touted ASTM F608 testing was run in "Carpet/Low Pile" mode and the manual cited in Dyson's Complaint did not include a "Carpet/Low Pile" setting. (Dkt. No. 104 ("Euro-Pro Br.") at 7.) However, Euro-Pro's advertisements containing the mouse-print "Carpet/Low Pile" disclaimer were disseminated ***at the same time*** that Euro-Pro was selling vacuums and corresponding instruction manuals bearing the "Turbo" and "Carpet" settings. Indeed, in running her testing of the Shark vacuums between September and November 2014, IBR's Susan Goldsmith observed four different combinations of settings names on the products, on the hang tags, and in the owner's manuals. (Dkt. No. 10 Ex. 6 (summary of settings observed in Shark units tested by IBR).) Euro-Pro asks the Court to punish Dyson for Euro-Pro's own inconsistency, and also ignores that it ran nationwide advertisements (*e.g.* in People Magazine) without any disclaimer whatsoever. As this Court has recognized, even Euro-Pro's CEO characterizes the Shark manuals as a "moving target." (Dkt. No. 118 at 9.)

[3]   "[Euro-Pro's most recent version of its] instruction[] [manual] is not in boxes that are currently on store shelves or in approximately two to three months worth of vacuums that are waiting to be moved into stores" and "[t]hus, the marketplace has a mix of outdated and current instructions." (Dkt. No. 118 at 10.)

2014, when the Shark Rotator Powered Lift-Away was released into the market, until February 2015, when Euro-Pro revised its manual—and dismiss this case in its entirety based on a manual that **did not exist** at the time the Complaint was filed but rather was created *after this case was filed and after Dyson moved for a preliminary injunction*. (Euro-Pro Br. at 7-8 (Euro-Pro stating that it updated its product manual on February 2, 2015 and that "[w]hen considering the **current** product manual . . . Dyson's litigation theory cannot be sustained") (emphasis added).)

The fact that Euro-Pro's February 2015 manual did not exist at the time Dyson filed the Complaint is fatal to Euro-Pro's position. *See Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997) (reversing district court's grant of motion to dismiss, and declining to consider a declaration and transcript filed with the motion to dismiss, in part, because the transcripts "apparently did not exist at the time plaintiffs filed their complaint" and "first appeared as exhibits to [defendant]'s motion to dismiss"); *Dubois v. Macy's Retail Holdings, Inc.*, No. 11 CV 4904 NGG LB, 2012 WL 4060739, at *9 n.15 (E.D.N.Y. Aug. 17, 2012) *report and recommendation adopted as modified*, No. 11-CV-4904 NGG LB, 2012 WL 4060586 (E.D.N.Y. Sept. 13, 2012) *aff'd*, 533 F. App'x 40 (2d Cir. 2013) ("As these documents were not referenced in plaintiff's complaint and were created after the complaint was filed, the Court does not consider these documents in evaluating the parties' motions."). Nor is that conclusion altered by the fact that the extra-pleading document is an "updated" version of Euro-Pro's manual. *See Newton v. Penguin/Berkley Pub. USA*, No. 13 CIV. 1283 CM, 2014 WL 61232, at *5 (S.D.N.Y. Jan. 6, 2014) (holding that updated version of book in copyright infringement dispute could not be properly considered with motion to dismiss because it was not identified in complaint).

The cases Euro-Pro cites in its motion do not support dismissal. Although Euro-Pro cites to cases where courts have dismissed complaints because documents relied upon in the

complaints were outdated, in all of those cases the documents relied upon were obsolete or outdated **before the complaints were filed**. *See, e.g., Mugnai v. Kirk Corp.*, 843 F. Supp. 2d 858, 870 (N.D. Ill. 2012) (dismissing ERISA case where complaint's allegations centered on the contents of a stock bonus plan that was outdated for at least seven years); *Culp v. Astrue*, No. EDCV07-504 JC, 2008 WL 2620381, at *5 (C.D. Cal. June 30, 2008) (dismissing social security benefits claim where the claim was predicated upon an internal agency manual that had been materially amended prior to the events in issue and filing of complaint); *GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc.*, 81 F. Supp. 2d 1003, 1008 (N.D. Cal. 1999) (dismissing wrongful conversion case for lack of subject matter jurisdiction, but finding that plaintiff relied on a document that had been outdated for at least three years at time complaint was filed).[4]

In fact, for the Court to consider Euro-Pro's litigation-driven revised manual, it would have to ignore the allegations in the Complaint, or take them as false—neither of which is proper at the motion to dismiss stage. *See Fed. Deposit Ins. Corp. v. Giancola*, No. 13 C 3230, 2014 WL 1056643, at *2 (N.D. Ill. Mar. 19, 2014) (declining to consider documents attached to defendants' motions to dismiss that allegedly proved plaintiff's claims false, and holding that "[i]t is not appropriate for the court at this stage of the case to interpret these documents or to weigh the evidence contained in them") (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)); *In re Neopharm, Inc. Sec. Litig.*, No. 02 C 2976, 2003 WL 262369, at *2-3 (N.D. Ill. Feb. 7, 2003) (granting plaintiff's motion to strike transcripts of conference calls attached as

---

[4]    Euro-Pro cites two other cases that are procedurally and factually inapposite. (*See* Euro-Pro Br. at 6-7 (citing *Snyder ex rel. Snyder v. Sec'y of Dep't of Health & Human Servs.*, No. 01-162V, 2009 WL 332044, at *59, n.157 (Fed. Cl. Feb. 12, 2009) (case decided in context of a petition for compensation under federal law, not a motion to dismiss, and thus did not address dismissal of a complaint based on "obsolete" information), and *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 409 F.3d 359, 364 (D.C. Cir. 2005) (case decided in context of appeal of a dismissal based on ripeness grounds, and the underlying dismissal and subsequent appeal were not based on a complaint that relied on the outdated version of a document).)

exhibits to defendants' motion to dismiss even though plaintiff referenced the conference calls in its complaint, and holding that the allegations in "Plaintiff's Complaint . . . are taken as true for purposes of [a Rule 12(b)(6)] motion"). Euro-Pro's request to dismiss this case under Rule 12(b)(6)—where the Court is required to look within the four corners of the Complaint— based on documents that *did not exist at the time the Complaint was filed* is improper.[5]

## B. Euro-Pro's Arguments Regarding The "Fit" Of Dyson's Testing Go Directly To Merits Of Dyson's Claims.

Euro-Pro also asks the Court to make ***factual determinations*** on the parties' competing positions on the appropriate settings to be used in ASTM F608 testing so as to contradict the allegations in Dyson's Complaint. In its Complaint, Dyson pled that it conducted its testing by adjusting the settings on Euro-Pro's NV651 and NV652 "[a]s called for in the ASTM protocol and as Euro-Pro instructs in its manual." (Compl. ¶¶ 30, 32.) Dyson further states that the "manipulated version of ASTM F608-13 reflected in Euro-Pro's ads . . . is a deviation from the ASTM protocol and contrary to how Euro-Pro instructs consumers to use the Shark Powered Lift-Away [in its instruction manual]." (Compl. ¶ 31.) Euro-Pro now argues, as it did extensively at the preliminary injunction hearing, that Dyson's testing does not "fit" Euro-Pro's ad statements because Euro-Pro's ad disclaimer states that its ASTM F608 testing was run on the high suction setting. (Euro-Pro Br. at 5.)

As this Court is well-aware, the question of the appropriate vacuum setting to be used during ASTM F608 testing is a critical, disputed issue of fact that goes to the merits of Dyson's claim of liability. (Dkt. No. 118 at 51 ("[T]he court reserves the pile height/setting issue for another day, when the record will be more fully developed.").) The Court declined to make such

---

[5] Moreover, even if the Court were to consider the February 2015 manual, to adopt Euro-Pro's arguments would nonetheless require the Court to decide factual issues (*i.e.*, interpreting the manual to determine the correct setting for shag), which is improper for a Rule 12(b)(6) motion.

a determination after a four-day *evidentiary* hearing on Dyson's motion for preliminary injunction.  By asking the Court to decide *on a motion to dismiss* that IBR's testing did not use the correct setting, Euro-Pro is asking this Court to decide the merits of the case; Euro-Pro's request completely oversteps the boundaries of a Rule 12(b)(6) motion.  *See U.S. Equal Employment Opportunity Comm'n v. Mont Brook, Inc.*, No. 13 CV 6799, 2014 WL 2119862, at *2 (N.D. Ill. May 20, 2014) ("[T]he Court declines Defendant's invitation to determine the merits of the case at this stage in the proceedings."); *DeVry Inc. v. Univ. of Med. & Health Sciences-St. Kitts*, No. 08CV3280, 2009 WL 260950, at *4 (N.D. Ill. Feb. 3, 2009) (denying motion to dismiss trademark infringement claim and stating that "whether a specific use is 'otherwise than as a mark' is a fact specific determination that the Court is not prepared to make at this early stage in litigation").  Euro-Pro's motion should be denied.

### C. Euro-Pro's Criticisms Of IBR's Testing Are Not A Basis For Dismissal.

Finally, in its instant motion to dismiss, Euro-Pro argues that the Court must dismiss Dyson's Complaint because IBR's testing is manipulated and untrustworthy.  If this sounds familiar, it is because Euro-Pro merely repeats the same arguments it made during the preliminary injunction hearing and in numerous subsequent filings with this Court.  (*See* Dkt. Nos. 84, 86, 106.)  Putting aside the fact that this Court has already denied Euro-Pro's Motion to Strike (Dkt. No. 118 at 42), Euro-Pro is asking the Court yet again to conduct a *Daubert* analysis, albeit this time at the motion to dismiss stage, which is patently improper under the law. Euro-Pro's arguments regarding the IBR testing are rife with factual disputes, which are inappropriate for adjudication on a motion to dismiss.[6]  *See Morningware, Inc. v. Hearthware Home Products, Inc.*, 673 F. Supp. 2d 630, 636 (N.D. Ill. 2009) (denying motion to dismiss

---

[6]    In fact, Euro-Pro included most of the arguments in its second motion to dismiss in its unsolicited "proposed findings of fact," which this Court struck as improper.  (Dkt. No. 106.)

Lanham Act claim and stating that "the Court simply cannot make a definitive ruling on the [trademark] 'use' issue without engaging in fact-finding, which is inappropriate at this stage of the litigation"); *Medallion Products, Inc. v. H.C.T.V., Inc.*, No. 06 C 2597, 2007 WL 1022010, at *3 (N.D. Ill. Mar. 29, 2007) (denying motion to dismiss defamation claim and holding "the resolution of factual issues [is] something not considered in ruling on a motion to dismiss"). If Euro-Pro's arguments could not form the basis for excluding IBR's testing under *Daubert*, they certainly cannot serve as a basis to dismiss the entire Complaint on a Rule 12(b)(6) motion.

## III. DYSON'S COMPLAINT SATISFIES RULE 9(B) AND THE ELEMENTS OF FALSE ADVERTISING UNDER THE LANHAM ACT.

Even if Euro-Pro's second motion to dismiss were considered procedurally proper—which it is not—it is still meritless, and should be denied because Dyson's Complaint satisfies Rule 9(b)'s particularity requirements and adequately pleads the factual bases that support each element of its false advertising claim. Moreover, although Euro-Pro's contention that Dyson must plead "legal theories" in its Complaint is completely devoid of any legal basis, Dyson has nonetheless pled sufficient facts for both implied falsity and establishment claim theories.

### A. Dyson's Complaint Sufficiently Pleads A False Advertising Claim.

To state a claim for false advertising, "the plaintiff must allege: (1) the defendant has made false statements of fact as to its own products or services; (2) those statements actually deceived or had a tendency to deceive a substantial section of their audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the defendant's falsely advertised goods have entered interstate commerce; and (5) there exists a likelihood of injury, stemming either from a decline in sales or a loss in good will." *See Hot Wax, Inc. v. Grace-Lee Products, Inc.*, No. 97 C 6882, 1998 WL 664945, at *2 (N.D. Ill. Sept. 15, 1998) (denying motion to dismiss false advertising claim). Euro-Pro does not dispute Dyson has pled these legal

elements, nor could it.  In its nineteen-page Complaint, Dyson provides significant detail in its factual allegations that not only support the five elements of a false advertising claim, but also identify the "who, what, where, when, and how" of Euro-Pro's false and misleading claims. *Ferris Mfg. Corp. v. Carr*, No. 14 C 04663, 2015 WL 279355, at \*6 (N.D. Ill. Jan. 21, 2015) (denying motion to dismiss false advertising claim under Rule 9(b)).  **First**, Dyson satisfied the "who" and "what" requirements by quoting Euro-Pro's television and print advertisements, product packaging, and website, in which "Euro-Pro repeatedly and pervasively tells consumers that its Shark Rotator Powered Lift-Away vacuum 'deep cleans carpets better than Dyson's best vacuum'" (Compl. ¶¶ 15-22), and pled that independent testing conducted pursuant to ASTM F608-13 render Euro-Pro's claims "demonstrably false and misleading" (Compl. ¶¶ 23-33). **Second**, Dyson satisfied the "when" requirement by stating that Euro-Pro's false advertising campaign launched "in late September 2014" and "Euro-Pro continues to make and disseminate its claims." (Compl. ¶¶ 5, 41.)  **Third**, Dyson satisfied the "where" and "how" requirements by alleging that Euro-Pro disseminated its false statements "nationwide" through "the internet, infomercials, television commercials, and print ads."  (Compl. ¶¶ 5, 15-22.)

Euro-Pro's motion to dismiss misconstrues the purpose and function of a complaint, as Euro-Pro would require that Dyson **prove** the merits of its false advertising claim in the Complaint or be subject to dismissal.  That is not the law.  Even Rule 9(b)'s pleading requirements do not—as Euro-Pro mistakenly asserts—require Dyson to explain or demonstrate why and how *the advertising statement* is false.  *See Vasarhelyi v. Vasarhelyi*, No. 09 C 2440, 2009 WL 2973069, at \*2 (N.D. Ill. Sept. 10, 2009) ("At the motion to dismiss stage, Rule 9(b) requires only that the plaintiff identify the alleged misrepresentations, ***not actually prove that the statement was false***.") (emphasis added) (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959

F.2d 677, 683 (7th Cir. 1992)). Rather, Dyson merely is required to state in its Complaint "the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated," which Dyson did. *Hot Wax*, 1998 WL 664945, at *3 (quoting *Bankers Trust*, 959 F.2d at 682).

As evidenced by Euro-Pro's own actions, Dyson's Complaint, read as a whole, complies with Rule 9(b)'s primary directive: "to inform [Euro-Pro] of the alleged wrongs and enable [it] to form an adequate defense and response." *Hot Wax*, 1998 WL 664945, at *3. Had Dyson's Complaint, in fact, been so "vague and conclusory" as Euro-Pro asserts, Euro-Pro would not have been able to brief its first motion to dismiss, oppose Dyson's motion for preliminary injunction, engage in expedited discovery, participate in a four-day preliminary injunction hearing, or file ***four*** post-hearing submissions regarding the facts of this case. In fact, this Court has already acknowledged the extensive factual allegations and relief sought in Dyson's Complaint. (Dkt. No. 65, at 9 ("While the parties were not required to provide extensive factual detail, they provided a thorough explanation of the alleged factual basis for their respective complaints and requested specific non-overlapping relief based on those allegations.").) Euro-Pro should not be allowed to feign ignorance this far into the litigation by asserting that Dyson's Complaint did not put it on notice of the claims against it.[7]

### B.    The Seventh Circuit Does Not Require Dyson To Plead Its Legal Theories.

Euro-Pro also contends that Dyson's Complaint must be dismissed because it fails to allege legal theories—namely, Dyson's "implied falsity" and "establishment claim" theories.

---

[7]    Euro-Pro's "puzzle pleading" argument is misplaced, as courts in the Seventh Circuit limit the application of the "puzzle pleading" standard to securities fraud cases. *See Hughes v. Accretive Health, Inc.*, No. 13 CV 3688, 2014 WL 4784082, at *5 (N.D. Ill. Sept. 25, 2014) (Gottschall, J.) (noting that the Seventh Circuit has not used the term puzzle pleading, but that district courts have applied it to Private Securities Litigation Reform Act cases where the complaint quotes "large blocks of text" from SEC filings or boilerplate assertions).

(Euro-Pro Br. at 4, 11.)  This argument is in direct contradiction with the Seventh Circuit's "strong commitment to the idea that *a plaintiff need not plead legal theories in her complaint*." *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (emphasis added); *see Junhao Su v. E. Illinois Univ.*, 565 F. App'x 520, 521 (7th Cir. 2014) ("Under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory.").

Even if Euro-Pro's arguments were not contradicted by longstanding Seventh Circuit law, they would nonetheless fail because Dyson's Complaint does, in fact, invoke both implied falsity and establishment claim theories.  Throughout the Complaint, Dyson repeatedly states that Euro-Pro's superior carpet cleaning performance claim is not only false but also "*misleading*." (Compl. ¶¶ 13, 15, 23, 33, 38, 42, 47-48, 59.)  Dyson further states that Euro-Pro's advertising has the "tendency to deceive" or "mislead" consumers.  (Compl. ¶¶ 6, 42, 49, 66.)  Although consumer perception data may ultimately be needed to *prove* an implied falsity theory to succeed on its claim of liability, Dyson was *not* required to provide consumer perception data in its Complaint.[8]  *See Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, No. 3:09-CV-302 JVB, 2010 WL 2674540, at *2 (N.D. Ind. June 29, 2010) (denying motion to dismiss false advertising claim and rejecting defendant's argument that plaintiff needed to allege and demonstrate actual consumer confusion to support its implied falsity theory).  Dyson's allegations clearly state a plausible claim that Euro-Pro's ads are impliedly false.

For the same reasons, Dyson's Complaint sufficiently alleges an establishment claim theory.  By definition, "establishment claims" are "advertisements in the form 'tests show x'."

---

[8]    The case Euro-Pro cites to the contrary is inapposite and actually highlights the impropriety of Euro-Pro's second motion to dismiss.  *See Morningware, Inc. v. Hearthware Home Products, Inc.*, No. 09 C 4348, 2012 WL 3835825, at *4 (N.D. Ill. Sept. 4, 2012) (denying motion for summary judgment, holding that "[r]egardless of whether the theory is one of literal or implied falsity, whether a claim is either 'false' or 'misleading' is an issue of fact rather than law.").

*BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1090 (7th Cir. 1994).  Dyson's Complaint states that Euro-Pro's accused carpet cleaning superiority claim purports to be based on "independent lab tests" by their very language.  (Compl. ¶¶ 18, 27, 31, 35, 37; *see* Dkt. No. 65 at 2-3 (order denying Euro-Pro's first motion to dismiss, citing paragraphs 16 and 18 of Dyson's Complaint and stating "Euro-Pro claims that 'independent lab tests' show that the 'Shark Rotator Powered Lift-Away' vacuum 'deep cleans carpets better than Dyson's best vacuum [the DC65].'").)  Dyson's Complaint also states that Euro-Pro's advertising claims are accompanied by a disclaimer that purports to be based on the "ASTM F608"—***an industry standard test***. (Compl. ¶¶ 17, 19, 35, 37.)  At the pleadings stage, Dyson could not *prove* that Euro-Pro's establishment claims were false—nor was it required to do so under the law—because Dyson did not have access to Euro-Pro's tests at that time.[9]  In short, Euro-Pro's second motion to dismiss should be denied because it is readily apparent that Dyson has alleged both implied falsity and establishment claim theories in its Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Dyson respectfully requests that this Court deny Euro-Pro's second motion to dismiss Dyson's original Complaint.

---

[9]    While Euro-Pro argues that "[h]ad Dyson wanted to bring an establishment claim, it could have asked for the independent testing referenced in Euro-Pro's advertising statement that Dyson challenges," at the hearing before Emergency Judge Dow, Dyson explicitly asked for the testing but Euro-Pro did not provide it.  (Dkt. No. 82 at 10:21-23 ("If they have -- and we asked for it again today -- if they have a test, their own test, that says, 'We can support this claim and it's not bunk,' well, hand it to us.").)

Dated:  March 25, 2015          Respectfully submitted,

By: */s/ Robin A. McCue*
    Robin A. McCue (IL Bar No. 6256551)
    rmccue@kirkland.com
    Ian J. Block (IL Bar No. 6299117)
    ian.block@kirkland.com
    Megan M. New (IL Bar No. 6300442)
    megan.new@kirkland.com
    Susan L. Tanaka (IL Bar No. 6314120)
    susan.tanaka@kirkland.com
    KIRKLAND & ELLIS LLP
    300 North LaSalle
    Chicago, Illinois 60654
    Telephone:  (312) 862-2000
    Facsimile:  (312) 862-2200

    Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
    glocascio@kirkland.com
    KIRKLAND & ELLIS LLP
    655 Fifteenth Street, N.W.
    Washington, D.C. 20005-5793
    Telephone:  (202) 879-5000
    Facsimile:  (202) 879-5200

    *Counsel for Plaintiff Dyson, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2015, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.

By: */s/ Robin A. McCue*