**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DYSON, INC., | ) | |
| *Plaintiff,* | ) | Case No.: 1:14-cv-09442 |
| v. | ) | Judge: Honorable Joan B. Gottschall<br>Magistrate: Honorable Sheila Finnegan |
| SHARKNINJA OPERATING LLC and SHARKNINJA SALES COMPANY, | ) | **JURY TRIAL DEMANDED** |
| *SharkNinja.* | ) | |

**DYSON, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANTS' UNCLEAN HANDS AFFIRMATIVE DEFENSE**

Despite recently—and erroneously—complaining that Dyson's First Amended Complaint sought to add "new" issues to this litigation, SharkNinja's recently-updated Answer does just that, attempting to significantly expand the scope of this case through the inclusion of its improper unclean hands defense. In its current Amended Answer, SharkNinja (formerly known as Euro-Pro) has added ***four entirely new bases*** for an unclean hands defense, trying to basically turn any and all advertising disputes it has had over the past two years with Dyson into a vehicle to bar Dyson's claim for equitable relief. SharkNinja's new, alleged unclean hands theories relate to different products, different performance criteria, and different testing standards than those already at issue in this case and appear to be yet another attempt by SharkNinja to try to gin up some negotiating "leverage" against Dyson. But SharkNinja did not previously raise these theories in its original Answer for good reason: they have nothing to do with the advertising at issue in this case; that is, they fail to satisfy the necessary nexus to the challenged advertising. As a matter of law, SharkNinja's newest allegations cannot support an unclean hands defense, which "only applies when there is a ***direct nexus*** between the bad conduct and

the activities sought to be enjoined." *Intertek USA Inc. v. AmSpec, LLC*, No. 1:14-cv-06160, 2014 WL 4477933, at *7 (N.D. Ill. Sept. 11, 2014) (Gottschall, J.) (emphasis added) (internal quotation and citation omitted).

Where a defendant cannot show a "direct nexus" to support an unclean hands defense, much less the "tight connection" required by the Seventh Circuit, the Court should eliminate such extraneous issues when faced with a motion to strike. *See, e.g.*, *Safe Bed Techs. Co. v. KCI USA, Inc.*, No. 02 C 0097, 2003 WL 21183948, at *2 (N.D. Ill. May 20, 2003) (granting motion to strike unclean hands defense where the alleged misconduct is not "directly related to the transaction at issue"). SharkNinja's allegations are extraneous and cannot meet this burden. ***First***, the ad claims SharkNinja now raises were either made in connection with Dyson vacuums not involved in this case—such as the DC33, DC41, and DC59—or were comparisons to competitor machines that are *not* the Shark machine at issue in this case, the Shark Rotator Powered Lift-Away. ***Second***, the alleged unclean hands ads raised by SharkNinja are based on different testing standards than the ASTM F608 standard at issue in this case, such as ASTM F558, ASTM F2607, and IEC 60312, as well as an overall six-surface geomean calculation of overall cleaning performance. If SharkNinja took issue with those claims, it could have—and indeed did in certain circumstances at the NAD—challenged those different claims, but that does not make them proper grounds for an unclean hands defense where they lack a direct, tight nexus to the challenged SharkNinja advertisement in this case.

Moreover, SharkNinja notably did not raise its new legal theories and factual allegations with Dyson nor did it seek leave from the Court to add them. Dyson's First Amended Complaint presented limited factual allegations designed to bring the case up-to-date with recent market changes, and it is procedurally improper for SharkNinja to assert new, and completely unrelated,

theories in response to that limited amendment. This is especially the case where SharkNinja has been aware of the Dyson ad claims that it now seeks to inject in its unclean hands defenses since before filing its original Answer in May. For that additional and independent reason, Dyson's motion to strike should be granted.

By including its four new unclean hands theories, SharkNinja seeks to litigate the truth or falsity of not just the original claim at issue, but four additional, different advertising claims previously made by Dyson. Incredibly, one of those claims—Dyson's "Twice the Suction" claim—is already pending in the separate Massachusetts lawsuit between the parties and was previously found by this Court to ***not arise*** out of the transaction or occurrence at issue in this case.[1] *See* Dkt. No. 65 at 11. SharkNinja's newfound unclean hands defenses will—and Dyson believes are designed to—greatly increase the scope of discovery in this case, delay the proceeding, and impose needless burden and duplicative litigation on Dyson. Particularly where SharkNinja ***cannot show*** a direct nexus between Dyson's false advertising claim and its unclean hands defenses, such wasted effort and burden on unrelated advertising claims is pointless and should not be countenanced.

## I. FACTUAL BACKGROUND

Dyson filed this lawsuit in November 2014, alleging that SharkNinja's claim that the Shark Rotator Powered Lift-Away "deep cleans carpets better than Dyson's best vacuum" is

---

[1] As the Court will recall, SharkNinja filed, but did not serve, a Complaint in the Massachusetts case in September 2014. *See* Dkt. No. 30 at 1. It was only ***after*** Dyson filed the instant litigation and its motion for preliminary injunction that SharkNinja served and pursued its Complaint in that case. *Id.* The issues being litigated by the parties in that case are (1) whether Dyson timely removed the "Twice the Suction" claim from the market after that claim became stale in July 2014, when SharkNinja released the Shark Rotator Powered Lift-Away, and (2) whether the "Twice the Suction" claim is impliedly false because it allegedly led consumers to believe that the DC65 offers superior carpet cleaning to SharkNinja's vacuums. Notably, lead counsel for SharkNinja previously admitted to the Massachusetts Court that the "Twice the Suction" claim was literally true prior to the release of the Shark Rotator Powered Lift-Away in July 2014. That case remains ongoing today.

literally false, and moved for a preliminary injunction.[2] *See, e.g.*, Dkt. No. 1 at ¶¶ 16-17; Dkt. No. 8. In order to avoid a preliminary injunction, SharkNinja argued repeatedly that Dyson had unclean hands based ***solely*** on Dyson's alleged failure to timely remove the discontinued "Twice the Suction" claim, which was literally true at the time it was made but became stale with the introduction of Shark's Rotator Powered Lift-Away. *See e.g.*, 1/16/2015 Hr'g. Tr. at 704:15-17 ("So we have an unclean hands defense based on the continuing and extensive presence of the false Dyson advertising in commerce."); *id.* at 705:6-13 ("So we were going to put on testimony . . . that says that we went around and we continue to find that [the "Twice the Suction" claim] is all over retail stores. And it's false. And so that goes to . . . our unclean hands defense."); Dkt. No. 83 at ¶¶ 3, 4 ("Euro-Pro raised unclean hands in its papers. Dyson replied that it was discontinuing the claim 'with all reasonable diligence,' and that the defense was not viable . . . Dyson's assertions are incorrect. Dyson's false claims remain in the market."). At the conclusion of the preliminary injunction hearing, the Court requested that SharkNinja submit a declaration on the issue of unclean hands. *See* 1/16/2015 Hr'g Tr. at 706:18-22. Notably, SharkNinja's submission, and supporting evidence, made clear that the sole basis of SharkNinja's unclean hands defense was Dyson's alleged failure to remove the "Twice the Suction" claim from the market. *See* Dkt. No. 83 at ¶¶ 3, 4; *see also* Dkt. Nos. 83-1 and 83-2 (declarations from SharkNinja's Senior Intellectual Property Counsel and Senior Director of

---

[2] In an attempt to avoid facing a potential preliminary injunction, SharkNinja moved to dismiss, transfer or stay this case in light of the case filed by SharkNinja in the Massachusetts case, arguing that SharkNinja's case against Dyson in that district was filed first, and that Dyson's claim in this case was a compulsory counterclaim in Massachusetts because it (allegedly) involves the same parties, vacuums, testing protocols, independent testing labs, causes of action, and vacuum superiority advertising claims. *See* Dkt. Nos. 18, 19. This Court denied that motion, finding that it could not "fairly read Euro-Pro's allegations about Dyson's 'twice the suction' marketing in the Boston case to include Dyson's claim of cleaning superiority over the 'Shark Rotator Powered Lift-Away,'" and that "the cleaning claims in this case are not compulsory counterclaims in the Boston case because they do not arise out of the transaction or occurrence that is at issue in the Boston case." *See* Dkt. No. 65 at 9-11.

Sales and Trade Marketing in support of SharkNinja's unclean hands submission regarding SharkNinja's efforts to locate the "Twice the Suction" claim in the market).

Because it filed two motions to dismiss, SharkNinja did not file its Answer to Dyson's original Complaint until May 18, 2015. At that time, SharkNinja included only a cursory assertion of the affirmative defense of unclean hands: "Dyson's claims are barred, in whole or in part, by the doctrine of unclean hands." *See* Dkt. No. 124 at First Affirmative Defense. SharkNinja's original Answer did not include a single allegation regarding any specific advertising claim, or plead the "direct nexus" required to sustain a defense of unclean hands.

As the Court is aware, Dyson amended its complaint on September 1, 2015. *See* Dkt. Nos. 146, 152. All that Dyson's First Amended Complaint ("FAC") added to this claim were new factual allegations regarding the carpet cleaning performance (under ASTM F608) of Dyson's updated DC65, the Dyson Ball Multi-floor, and Shark's latest models for the Powered Lift-Away, all of which have entered the market since Dyson's original Complaint was filed. Despite Dyson's limited amendment, when SharkNinja filed its Answer—and then its Amended Answer—to Dyson's FAC, it pled extensive new factual allegations and legal theories to support its unclean hands defense, none of which are even remotely related to Dyson's affirmative false advertising claim. *See* Dkt. Nos. 159 and 167 at First Affirmative Defense. Specifically, SharkNinja identified ***three different advertising statements***, as well as new allegations regarding the literal and implied falsity of Dyson's "Twice the Suction" claim, as the bases for its unclean hands defense.[3] Whereas Dyson's affirmative claim against SharkNinja involves

[3] Notably, although SharkNinja repeatedly represented to Dyson and this Court during and after the preliminary injunction hearing that the basis for its unclean defense was Dyson's failure to timely remove the "Twice the Suction" claim from the market, SharkNinja has not pled a single fact related to removal of that claim. In other words, despite trying to rely on the allegedly untimely removal to defeat an injunction, SharkNinja has now, apparently, dropped that argument.

ASTM F608 testing on the Shark Rotator Powered Lift-Away vs. Dyson's DC65 and its re-engineered Dyson Ball Multi-Floor, SharkNinja's newly-added unclean hands defense now seeks to challenge the truth of the following Dyson ad claims:

- **"Twice the Suction":** This claim, which was discontinued in November 2014, was made in connection with Dyson's DC41 and the DC65. The substantiation for this claim involves a test standard, ASTM F558, that is not related to and has no nexus with ASTM F608. *See* Dkt. No. 65 at 10-11 ("[T]he Court is persuaded by the different ASTM standards that are used to measure suction and cleaning."). Moreover, this claim was discontinued with the introduction of the Shark Rotator Powered Lift-Away, the accused vacuum in Dyson's FAC; this claim was made in comparison to other, unaccused Shark vacuums.

- "**Cleans Better Than Any Other Vacuum Across Carpets and Hard Floors":** This claim, which was discontinued in fall of 2014, is based on a six-surface geomean that is calculated from the individual surface scores from three different test standards. Specifically, the testing for this claim includes ASTM F608 and ***two additional test standards***: ASTM F2607, which measures the cleaning ability of vacuums on flat hard floors, and IEC 60312, which measures cleaning ability on hard floors with crevices. Moreover, although this claim was made in connection with the DC65, the point of comparison for this claim was *not* the Shark Rotator Powered Lift-Away, but rather other competitor vacuums.

- **"Sucks Up As Much Dust As a Conventional Vacuum Without The Hassle Of A Cord":** This claim was made in connection with Dyson's cordless vacuum, the DC59, which is not at issue in this case.[4] This claim similarly involves the six-surface geomean calculated from the aggregate scores from the three test standards, namely ASTM F2607, IEC 60312, and ASTM F608. At the time Dyson began making this claim—which has been out of the market for almost a year—SharkNinja was not selling the Shark Rotator Powered Lift-Away, and the claim was made against other competitor vacuums.

- **"[P]roven To Clean Carpets Better Than A Shark":** This claim is substantiated by ASTM F608 testing, but it is a limited claim that compares one single Dyson model, the DC33, to a specific Shark vacuum model, namely the NV400 and NV402—none of which are at issue in this case, and so would involve entirely different testing reports than those currently at issue.

[4] During the parties' negotiation of the ESI Agreement and email search terms, SharkNinja also asked Dyson to search for documents related to this vacuum because, according to SharkNinja, those documents related to its unclean hands defense. *See generally* Ex. 1. Dyson again explained that SharkNinja had repeatedly represented that their unclean hands defense related to removal of the "Twice the Suction" claim, that the DC59 was never advertised in connection with that claim, and as a result, Dyson would not search for documents related to that vacuum. *See id.* Dyson also noted that SharkNinja had not pled, and could not show, that there was a direct nexus between the DC59 and the ad claims made in connection with that product and SharkNinja' false advertising at issue in this case. *Id.* at 8/14/2015 Email from M. New to M. Farley. SharkNinja never responded to Dyson's August 14, 2015 email regarding the lack of nexus and relevance of the DC59, which indicated to Dyson that issue was moot. Since that time, Dyson has completed its email searches based on the search terms and protocol agreed to by the parties, and those efforts have not included searching for documents and emails related to the DC59.

(*See* Dkt. No. 167 at First Affirmative Defense.)

Notably, each of Dyson's advertising claims now identified in SharkNinja's unclean hands defense was in the market long before Dyson filed this lawsuit, and with the exception of the claim made in connection with the DC33, was *removed* from the market months ago. Each of these ad claims was also known to SharkNinja before it filed its Answer to Dyson's original Complaint in May, but was never alleged as a basis for SharkNinja's unclean hands defense until now.[5] On their face, these allegations bear no relationship to Dyson's false advertising claim against SharkNinja. As a result, the defense is insufficient as a matter of law. SharkNinja's unclean hands defense should be stricken. Indeed, motions to strike are made for exactly these types of irrelevant allegations.

## II. ARGUMENT

A motion to strike is the appropriate mechanism for removing "redundant, immaterial, impertinent, or scandalous matter." *See* FED. R. CIV. P. 12(f). Motions to strike affirmative defenses should be granted where the defense is "patently defective" on the face of the pleadings, because granting the motion removes unnecessary clutter from the case. *Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc.*, No. 05 C 6656, 2007 WL 1238917, at *1 (N.D. Ill. Apr. 25, 2007) ("A motion to strike serves the useful purpose [of] eliminating insufficient defenses and saving the time and expense that otherwise would be spent litigating issues that will not affect the outcome of the case.") (internal citations and quotations omitted). Thus, the court should strike an affirmative defense "as legally insufficient if the plaintiff shows that the defendant

[5] Indeed, SharkNinja challenged the "Twice the Suction," "Cleans Better Than Any Other Vacuum Across Carpets and Hard Floors," and "Sucks Up As Much Dust As a Conventional Vacuum Without The Hassle Of A Cord" claims at NAD in 2014, and the National Advertising Division of the Council of Better Business Bureau's ("NAD") decision on those claims issued in October 2014—***seven months*** before SharkNinja filed its original Answer in this case. If SharkNinja truly believed that these Dyson ad claims could form the basis of SharkNinja's unclean hands defense, it should have pled those allegations when it answered Dyson's original Complaint in May.

could not possibly prove a set of facts under the affirmative defense that would defeat the complaint." *Safe Bed*, 2003 WL 21183948, at *2 (granting motion to strike).

Importantly, the defense of unclean hands is "insufficient as a matter of law" and should be stricken where the plaintiff's alleged misconduct "is not connected to the transactions complained of in th[e] suit." *MPC Containment Sys., Ltd. v. Moreland*, No. 05 C 6973, 2008 WL 1775501, at *5 (N.D. Ill. Apr. 17, 2008) (granting motion to strike); *Safe Bed*, 2003 WL 21183948, at *5 (holding that the "[u]nclean hands is not a valid defense" unless the alleged misconduct is "directly related to the transaction at issue"); *SEG Liquidation Co., LLC v. Stevenson*, No. 07 C 3456, 2008 WL 623626, at *5 (N.D. Ill. Mar. 6, 2008) (striking unclean hands defense where defendant "failed to sufficiently state an affirmative defense of unclean hands" because the events raised in the defense were "not intertwined to the degree that they would be considered part of the same transaction"). Here, because SharkNinja cannot, based on its own pleadings, establish as a matter of law that Dyson's alleged "unclean hands" have a direct nexus with the false advertising claim at issue in this case, such relief is appropriate.

### A. SharkNinja's Unclean Hands Affirmative Defense Should be Stricken Because There Is No Direct Nexus Between Dyson's Affirmative False Advertising Claim and SharkNinja's Unclean Hands Allegations.

The unclean hands defense does not apply "unless there is a connection between the plaintiff's misconduct and the claims he is asserting against the defendant[]." *Sullens v. Graham*, No. 14 CV 866, 2014 WL 6765138, at *2 (N.D. Ill. Dec. 1, 2014). In order to prevent a party from using the unclean hands defense as a "loose cannon" to deprive a plaintiff of an "equitable remedy to which [it] is otherwise entitled," the Seventh Circuit requires a "tight connection" between the parties' alleged misconduct. *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 601 (7th Cir. 1986); *Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir. 1985) ("Unless courts insist on a tight connection between the object of the injunction and the

misconduct of the plaintiff, suits for injunction will bog down in all sorts of collateral inquiries."). This Court has routinely granted motions to strike where, as here, the defendant cannot meet this high standard. *See, e.g.*, *Sullens*, 2014 WL 6765138, at *2 (granting motion to strike where plaintiff's claims based on unlawful access of his personal email account were not "sufficiently related to whether he, at some earlier point, stole school property such that he is barred from court on his claims"); *SEG*, 2008 WL 623626, at *5 (striking unclean hands defense where plaintiff's claim arose from defendant's breach of contract and default on loan payments and defendant "d[id] not allege any misconduct on [plaintiff's] part with respect to those transactions," but rather, that plaintiff mismanaged defendant's company); *Safe Bed*, 2003 WL 21183948, at *6 (striking unclean hands defense where plaintiff's "misappropriation of [defendant's] inventions did not take place in the context of, and was not connected to, the patent infringement suit against [defendant]"); *Truserv Corp. v. Chaska*, No. 02 C 1018, 2003 WL 924509, at *21 (N.D. Ill. Mar. 6, 2003) ("The transaction at issue in TruServ's complaint relates to the Member Agreement . . . . Because the [defendant's] allege unclean hands in relation to the amendment to the Certificate of Incorporation, not the Member Agreement, the court dismisses this affirmative defense.").

There can be no dispute that SharkNinja's unclean hands defenses ***do not*** arise from the same transaction at issue in this lawsuit, which focuses exclusively on SharkNinja's false carpet cleaning claims made in connection with its Shark Rotator Powered Lift-Away vacuum. The only facts SharkNinja pleads in its new unclean hands defense to show any sort of nexus is that Dyson's ad claims were substantiated, at least partially and only in some circumstances, by ASTM F608 and that some—but not all—of the claims were made in connection with the DC65. Those limited similarities are not nearly enough to support a defense of unclean hands. *MPC*

*Containment*, 2008 WL 1775501, at *6 ("[P]leading tangential connections or mere interrelatedness among events is insufficient to satisfy the legal requirement that an alleged misconduct is 'connected to' the transaction involved in the suit."). Instead, SharkNinja must show that "the alleged misconduct dirtying the hands of the plaintiff [occurred] ***in the context of the present lawsuit***." *Safe Bed*, 2003 WL 21183948, at *5 (emphasis added); *Sullens*, 2014 WL 6765138, at *2 ("The Supreme Court has said that [for unclean hands to apply,] the plaintiff's wrong must be a 'willful act ***concerning the cause of action***' such that plaintiff is 'tainted with inequitableness or bad faith ***relative to the matter in which he seeks relief.***'") (emphasis original) (quoting *Precision Inst. Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814–15 (1945)); *Intertek USA Inc. v. AmSpec, LLC*, No. 1:14-cv-06160, 2014 WL 4477933, at *7 (N.D. Ill. Sept. 11, 2014) (Gottschall, J.) ("[T]he clean hands doctrine only applies when there is a direct nexus between the bad conduct and the activities sought to be enjoined.").[6] SharkNinja cannot do so. To be sure, SharkNinja's unclean hands defense amounts to nothing more than allegations that "Plaintiffs do it, too." *See OSF Healthcare Sys. v. Banno*, No. 08-1096, 2010 WL 431963, at *3 (C.D. Ill. Jan. 29, 2010) (recommending that unclean hands defense be stricken); *MPC Containment*, 2008 WL 1775501, at *4 ("Misconduct that is not directed at the other party or that is tangential to the transaction at issue will not be considered directly connected."). SharkNinja's reliance on Dyson's ad claims involving different Dyson and competitor vacuums, different test standards and performance criteria, different types of ad claims (*e.g.*, claims related to suction performance and cleaning across all floors, not just

[6] *See also Donovan v. Quade*, 830 F. Supp. 2d 460, 500 (N.D. Ill. 2011) ("For unclean hands to apply, a party's misconduct must rise to the level of fraud or bad faith and that conduct must directly involve the transaction which is the subject of the litigation.") (internal quotations omitted); *SEG*, 2008 WL 623626, at *4 ("A party seeking equitable relief may be denied relief if that party has engaged in misconduct, fraud or bad faith toward the party he or she is now suing, if the misconduct involved the same transaction that is at issue in the suit.").

carpets), and different evidence than that already being collected and produced in connection with Dyson's false advertising allegations is not sufficient.

**B. SharkNinja's Unclean Hands Defense Should Be Stricken Because It Is Procedurally Improper.**

SharkNinja's unclean hands defense should also be dismissed for the independent reason that SharkNinja did not in any way move to amend its Answer (or Amended Answer) to include new allegations regarding that defense, let alone within the time frame set by the Court for amending pleadings. *See* Dkt. No. 141 (setting August 25, 2015 as deadline to amend the pleadings).

"[W]hen a plaintiff files an amended complaint which does not change the theory or scope of the case, the defendant is not allowed to plead anew as though it were the original complaint filed by the plaintiff." *Videojet Systems Int'l, Inc. v. Inkjet, Inc.*, No. 95 C 7016, 1997 WL 124259, at *6 (N.D. Ill. Mar. 17, 1997) (striking new counterclaim where defendant did not seek leave of court where plaintiff amended complaint to add new factual allegations that were "based on the same theory of patent infringement that supported the original complaint"); *see also Tensor Grp., Inc. v. Global Web Sys., Inc.*, No. 96 C 4606, 1999 WL 617818, at *3 (N.D. Ill. Aug. 11, 1999) (striking affirmative defenses where amended complaint did not change the theory or scope of the case and defendant did not seek leave to amend). Rather, it is only permissible for SharkNinja to make changes to its answer that are "limited to the breadth of the changes made in the amended complaint." *See Spencer Cnty. Redevelopment Comm'n v. AK Steel Corp.*, No. 3:09-CV-00066-RLY, 2011 WL 3806947, at *3 (S.D. Ind. Aug. 26, 2011) (granting motion to strike affirmative defenses where defenses exceeded the scope of the amended complaint). That is not what SharkNinja has done here.

Although SharkNinja pled an unclean hands defense in its Answer to Dyson's original

Complaint, that pleading ***did not include a single factual allegation*** regarding SharkNinja's defense or the ad claims that formed the basis of the defense. *See* Dkt. No. 124 at First Affirmative Defense. It is undisputed that Dyson's FAC contains no new legal theories and was amended merely to add new factual allegations related to new products that have entered the market between the time Dyson filed its original Complaint and the FAC. *See* Dkt. No. 152. But in both its Answer and its Amended Answer to Dyson's FAC, SharkNinja does not limit its new allegations or defenses to the facts pled in Dyson's FAC; instead, SharkNinja sets forth four new, unrelated and independent legal theories involving different advertising claims in support of its unclean hands defense.[7] It was improper and prejudicial for SharkNinja to set forth these new theories and unilaterally broaden the scope of this case without leave of court in response to Dyson's limited factual amendments. *See AK Steel*, 2011 WL 3806947, at *4 (striking defenses where plaintiff amended complaint to "include facts that occurred after the filing of the original Complaint . . . and brought the action up to date" but new defenses pled by defendant in their answer "plainly exceed the breadth of the changes" to the complaint because they were "in response to the First Amended Complaint as a whole, not merely the portions of the pleadings which were supplemented" and finding prejudice to plaintiff where allowance of affirmative defenses would "most certainly delay the final disposition of this action").

Moreover, adding the four new advertising claims to the case will require the parties to

[7] As noted above, each and every one of the ad claims that form the basis of SharkNinja' unclean hands defense was known to SharkNinja prior to the filing of their original Answer. *See* Dkt. No. 167 at First Affirmative Defense (stating that the ad claims identified were made in or have been made since 2013 and 2014). SharkNinja has not provided, and cannot make, any excuse for why it failed to disclose the bases of its defense when it filed its original Answer and it should not be permitted to amend now, without leave of Court, to include advertising claims that have no nexus with the issues in this case and that have been known to SharkNinja for more than a year. *See AK Steel Corp*., 2011 WL 3806947, at *4 ("Because AK Steel failed to assert these defenses promptly when their availability was apparent, as well as failed to adequately prove that they were not available, it may not use the filing of the [Plaintiff's] First Amended Complaint as a mechanism to assert new defenses as a matter of right.") (internal citations omitted).

litigate—and the Court to decide—the truth or falsity of each of those four additional ad claims. That will dramatically expand the scope of discovery in this case. Indeed, as noted above, the parties have already agreed on an ESI protocol, agreed on search terms and email custodians, searched for documents, and, in Dyson's case, have already produced thousands of documents. Allowing this improper kitchen sink defense to go forward will require the parties to go back to the drawing board on the ESI Agreement and collect, review and produce a substantial number of unanticipated documents. It will also require the parties to retain testing experts and submit expert reports on various different test methodologies and test reports far beyond those ASTM F608 test reports for the current, relevant machines (*i.e.*, Shark Rotator Powered Lift-Away and DC65 and its latest version Dyson Ball Multi-Floor). And if they are to survive, SharkNinja's allegations that each of the four advertising claims is misleading will also require SharkNinja to submit, and Dyson to respond to, four different surveys regarding the allegedly misleading aspect of the ad claims. *See Republic Tobacco L.P. v. N. Atl. Trading Co.*, No. 06 C 2738, 2007 WL 1424093, at *4 (N.D. Ill. May 10, 2007) ("If the statement is literally true or ambiguous, a plaintiff must prove that the statement is misleading in context by demonstrat[ing] actual consumer confusion. Actual confusion is shown by either direct evidence or survey evidence.") (internal quotation and citation omitted). This expansion of the scope of discovery will, in turn, force the parties to again alter the schedule,[8] which will substantially impact the timely resolution of this case. Such an adverse impact on the case and the relief to which Dyson is

[8] On August 27, the parties filed a Joint Motion to Extend the Discovery Schedule, *see* Dkt. No. 150, and appeared before Magistrate Judge Finnegan on that motion on September 16. At the time that the parties negotiated the new schedule, SharkNinja did not raise, and the parties did not account for, the addition of three completely new advertising claims and new allegations regarding "Twice the Suction." Moreover, at the September 16 hearing, Magistrate Judge Finnegan asked the parties several questions to determine whether they would be able and likely to complete discovery by December 4, and at no time did SharkNinja indicate they would be adding new allegations and legal theories to its unclean hands defense that would obviously impact the scope of discovery and the parties' ability to meet the December 4 deadline.

entitled should not be permitted.

Dyson sought to make simple, straightforward amendments to its Complaint and SharkNinja seized that opportunity to broadly expand the scope of its unclean hands affirmative defense. It was improper for SharkNinja to do so, and for this independent reason, its unclean hands defense should be stricken.

## III. CONCLUSION

For the foregoing reasons, the portions of SharkNinja's affirmative defense of unclean hands referenced herein should be stricken.

* * *

Dated: October 14, 2015

Respectfully submitted,

By: */s/ Megan M. New*

Robin A. McCue (IL Bar No. 6256551)
rmccue@kirkland.com
Ian J. Block (IL Bar No. 6299117)
ian.block@kirkland.com
Megan M. New (Bar No. 6300422)
megan.new@kirkland.com
Susan L. Tanaka (IL Bar No. 6314120)
susan.tanaka@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
glocascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Plaintiff Dyson, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2015, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.

By: */s/ Megan M. New*