**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DYSON, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHARK OPERATING LLC and SHARK SALES COMPANY, <br><br> *Defendants*. | Case No.: 1:14-cv-09442 <br><br> Judge: Hon. Gary S. Feinerman <br><br> **JURY TRIAL DEMANDED** |

**DECLARATION OF ROBIN A. MCCUE
IN SUPPORT OF DYSON'S BILL OF COSTS**

I, Robin A. McCue, hereby declare as follows:

1. I am over eighteen years of age, have personal knowledge of the facts stated herein, and if called upon to do so, could and would testify competently thereto.

2. I am an attorney at Kirkland & Ellis LLP and represent Dyson, Inc. ("Dyson") in the above-styled action. Pursuant to 28 U.S.C. § 1924, I submit this Declaration in support of Dyson's Bill of Costs, filed contemporaneously herewith.

3. On June 11, 2018—after nearly four years of litigation culminating in a 10-day trial—the jury unanimously found Shark liable for willful false advertising. The Court entered the jury's verdict that same day, noting that Dyson "shall recover costs" from Shark. (Dkt. 738 at 1.)

4. To prepare Dyson's Bill of Costs, I reviewed numerous invoices for expenses Dyson incurred during this litigation. This Declaration presents a detailed explanation of Dyson's entitlement to the specific costs claimed in its Bill, as authorized by controlling law.

1

I.      **LEGAL STANDARD**

5.      In harmony with the Federal Rules of Civil Procedure, the Lanham Act explicitly authorizes Dyson, as the prevailing party, to recover certain taxable costs from Shark.  Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."); 15 U.S.C. § 1117(a) ("When a violation … under section 1125(a) … of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, … subject to the principles of equity, to recover … the costs of the action."); *see also* 815 ILCS 510/3 ("Costs or attorneys' fees[1] or both may be assessed against a defendant only if the court finds that he has wilfully engaged in a deceptive trade practice.").  In the Seventh Circuit, "there is a strong presumption that costs will be awarded to the prevailing party."  *U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009); *see also Myrick v. WellPoint, Inc.*, 764 F.3d 662, 666 (7th Cir. 2014).

6.      "The costs that may be awarded to prevailing parties in lawsuits brought in federal court are set forth in 28 U.S.C. § 1920."  *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 1999–2000 (2012).  "§ 1920 defines the term 'costs' as used in Rule 54(d)."  *Id.* at 2001 (citation omitted).  Section 1920 provides that "[a] judge or clerk of any court of the United States may tax as costs the following:  (1) Fees of the clerk and marshal;  (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;  (3) Fees and disbursements for printing and witnesses;  (4) Fees for exemplification and the costs of making copies of any

---

[1]  Dyson has moved for a finding that this case is "exceptional" for the purpose of seeking attorneys' fees from Shark. (*See generally* Dkt. 742.)  As explained in Dyson's Memorandum of Law supporting that motion, an exceptionality analysis under both the Lanham Act and the Illinois DTPA is "essentially the same." (Dkt. 743 at 2 n.2.)  The parties have agreed to a briefing schedule with respect to that issue, which the Court adopted. (Dkt. 745.)  Therefore, this Declaration only supports Dyson's entitlement to certain taxable costs; it does not address the separate issue of Dyson's additional entitlement to reasonable attorneys' fees.

materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920. "Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). "[T]he losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

7. In addition to—and indeed independent of—costs under Section 1920 and Rule 54(d), Dyson is further entitled to recover its own expert witness fees under Rule 26(b): "Unless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)." Fed. R. Civ. P. 26(b)(4)(E); *see also Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 951 (N.D. Ill. 2012) ("An ample number of district court cases within the Seventh Circuit [] support the conclusion that a party's recovery of its own expert witness fees under Rule 26(b)(4)(E) is independent of Rule 54(d).").

## II.    DYSON'S BILL OF COSTS

### A.    Reporter and Transcript Fees Pursuant to 28 U.S.C. § 1920(2)

8. As the prevailing party, Dyson may recover costs for transcripts "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). "[T]ranscripts need not be absolutely indispensable in order to provide the basis of an award of costs; it is enough if they are reasonably necessary." *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993) (citation and internal quotation marks omitted). In this Court, "the expense of any prevailing party in necessarily obtaining all or any part of a transcript for use in a case, for purposes of a new trial, or amended findings, or for appeal

shall be taxable as costs against the adverse party." LR54.1(b). Dyson's Bill claims costs associated with obtaining reasonably necessary deposition, hearing, and trial transcripts, including related expenses where authorized by law.

9. Deposition transcripts (including stenographic and video) produced in this case may be taxed against Shark if they were "necessarily obtain[ed]." LR54.1(b). Importantly, "[t]he determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening developments that later render the deposition unneeded for further use." *Barber*, 7 F.3d at 645. Dyson's Bill of Costs seeks reimbursement for deposition transcripts totaling $57,461.82. This amount accounts for transcripts produced in both Dyson's and Shark's expert, fact, and third-party witnesses' depositions, as summarized in the following table:

| Deposition Transcript Type | Amount |
|---|---|
| Dyson's Fact Witnesses | $10,545.95 |
| Shark's Fact Witnesses | $21,147.17 |
| Dyson's Expert Witnesses | $7,468.68 |
| Shark's Expert Witnesses | $13,616.17 |
| Third-Party Witnesses | $4,683.85 |
| **Total** | **$57,461.82** |

A detailed breakdown of Dyson's calculation of transcript costs for each witness, including corresponding invoices, is attached hereto as Exhibit 1. Each of above witness categories is explained more fully in the following paragraphs.

    *1. Deposition Transcripts*

10. **Dyson's Fact Witnesses.** Dyson seeks to recover the cost of transcripts from fact depositions noticed and taken by Shark. *Chicago Bd. Options Exchange, Inc. v. Int'l Sec. Exchange, LLC*, No. 07-cv-623, 2014 WL 125937, at *2 (N.D. Ill. Jan. 14, 2014) ("For the depositions arranged by [Defendant], [Plaintiff] can recover its actual costs of obtaining the original and one copy of the deposition transcript."). These witnesses include Jason Brown, Ed

4

Culley, Lenore Kaplan, Jordan Ward, Scott McKie, Clare Dunbar, and Paula Patel. All of these depositions were taken because Shark determined that it was necessary to do so. In fact, Shark identified both Mr. Brown and Ms. Kaplan as individuals likely to have discoverable information in Shark's original Rule 26(a) initial disclosures. Each of these witnesses offered testimony relevant to the issues in this case, as evidenced by the fact that every single deponent except for Ms. Patel offered testimony that was cited in both parties' summary judgment briefing. (Dkt. 343 at 2 (citing Mr. Brown's deposition transcript); Dkt. 367 at 36 (citing Mr. Culley's deposition transcript); *id.* at 17 (citing Mr. McKie's deposition transcript); *id.* at 18 (citing Ms. Dunbar's deposition transcript); Dkt. 325 at 9 (citing Ms. Kaplan's deposition transcript); *id.* at 3 (citing Ms. Ward's deposition transcript).) And Shark cited Ms. Patel's deposition in its *in limine* filings. (*See generally* Dkt. 653 (seeking to admit and use Ms. Patel's deposition transcript at trial); Dkt. 545 at 2 (citing Ms. Patel's deposition transcript).) Also, all of these witnesses appeared—at least by deposition—on Shark's trial witness list. (Dkt. 650-9 at 7–9.)

11. **Shark's Fact Witnesses.** Dyson also seeks to recover the cost of transcripts from depositions noticed by Dyson. These witnesses include Jennifer McCabe, Karyn Medler, Mark Barrocas, Mark Rosenzweig, Lorraine Hull, Ryan Sax, Dan Bilger, and Brian Lagarto. Just as with Dyson's fact witnesses, all of these depositions were taken because, at the time, Dyson determined that it was necessary to do so. Ms. McCabe, Ms. Medler, Mr. Barrocas, Mr. Rosenzweig, and Mr. Bilger were all identified as individuals likely to have discoverable information in Shark's original Rule 26(a) initial disclosures. Shark further designated Ms. Medler, Mr. Bilger, Ms. Hull, and Mr. Lagarto as Rule 30(b)(6) witnesses to testify on its behalf. Dyson took Mr. Sax's deposition because his name appeared in numerous production documents relating to critical and central issues in this case, including Shark's NV650 settings and manual

5

change. (*See, e.g.*, TX-219.) All of these witnesses except for Mr. Lagarto offered testimony that was cited in the parties' summary judgment briefing. (Dkt. 367 at 33 (citing Ms. McCabe's deposition transcript); *id.* at 18 (citing Ms. Medler's deposition transcript); *id.* at 32 (citing Mr. Barrocas's and Mr. Rosenzweig's deposition transcripts); *id.* at 16 (citing Ms. Hull's deposition transcript); *id.* at 39 (citing Mr. Bilger's deposition transcript); Dkt. 343 at 15 (citing Mr. Sax's deposition transcript).) And Mr. Lagarto's deposition testimony was critical to discovering Shark's accounting practices and uncovering the unreliability of Shark's financial information. (*See generally* Dkt. 496 (citing Mr. Lagarto's deposition transcript).) Finally, all of these witnesses appeared on Shark's trial witness list (Dkt. 650-9 at 3–8) and Shark called all of these witnesses save for Mr. Sax, and Dyson called five of the eight Shark witnesses adversely during its own case.

12. **Dyson's Expert Witnesses.** Dyson seeks to recover the cost of transcripts from the depositions noticed by Shark of Dyson's experts. *Chicago Bd. Options Exchange, Inc.*, 2014 WL 125937, at *2. These witnesses include Susan Goldsmith (January 2015 deposition only), Lew Migliore, Julie Davis, Dan Miller, and Laurentius Marais. All of these depositions were taken because, at the time, Shark determined that it was necessary to do so. These witnesses were retained by Dyson pursuant to Fed. R. Civ. P. 26(a)(2)(B), and provided a written expert report setting forth their opinions in this case. Dyson retained Ms. Goldsmith and Mr. Miller to opine on ASTM F608 testing, Dr. Marais to opine on the statistical significance of that testing, and Ms. Davis to opine on disgorgement of Shark's profits. Dyson retained Mr. Migliore to rebut the expert opinions offered by Shark's carpet expert, James Gould. The deposition transcripts for these witnesses were necessary for Dyson to oppose any *Daubert* or other *in limine* briefing as to the experts' opinions. (*See generally* Dkt. 504 (Shark's motion *in limine* to exclude certain opinions of Ms. Goldsmith, Mr. Miller, and Dr. Marais); Dkt. 514 (Shark's motion *in limine* to exclude

6

certain opinions of Ms. Davis); Dkt. 524 (Shark's motion *in limine* to exclude certain opinions of Mr. Miller and Mr. Migliore).) All of these experts except for Ms. Goldsmith appeared on Dyson's trial witness list. (Dkt. 650-8 at 2–5.) However, Ms. Goldsmith appeared on Shark's trial witness list and was called via deposition by Shark at trial. (Dkt. 650-9 at 5.)

13. **Shark's Expert Witnesses.** Dyson seeks to recover the cost of transcripts from depositions noticed by Dyson of Shark's proffered experts. These witnesses include Mr. Gould, Matthew Lynde, Karyn Medler, Arnold Barnett, and Jason Prentice. These depositions were necessary in order for Dyson to challenge the testimony and qualifications of these proffered experts. All of these witnesses were retained by Shark pursuant to Fed. R. Civ. P. 26(a)(2)(B), and provided a written expert report setting forth their opinions in this case. Shark retained Mr. Gould to opine on carpet pile heights, Dr. Lynde to opine on Shark's profits, and Mr. Prentice to opine on ASTM F608 testing. Shark also disclosed its intention to rely on Ms. Medler as a Rule 26(a)(2)(C) expert on, *inter alia*, ASTM F608 testing. Additionally, Mr. Barnett and Mr. Prentice offered rebuttal opinions to Dyson's Mr. Miller and Dr. Marais relating to ASTM F608 testing. The deposition transcripts for these witnesses were necessary for Dyson to prepare for trial, as well as any *Daubert* or other *in limine* briefing as to their expert opinions. (*See generally* Dkt. 485 (Dyson's motion *in limine* to exclude certain opinions of Ms. Medler); Dkt. 491 (Dyson's motion *in limine* to exclude certain opinions of Dr. Lynde).) All of these witnesses appeared on Shark's trial witness list. (Dkt. 650-9 at 2–5.)

14. **Third-Party Witnesses.** Dyson seeks to recover the cost of transcripts from third party depositions noticed by Dyson and Shark. First, Dyson deposed Intertek employees Alex Porter and Steve Reese. These depositions were necessary, because the testing done by and the independence of Intertek from Shark were hotly disputed issues at trial, and—since both witnesses

are beyond the subpoena power of the Court—it was not clear that either witness would be made available to testify live at trial. Additionally, pursuant to subpoena, Shark deposed IBR and Susan Goldsmith individually in 2016. Shark relied heavily on testimony from this deposition at trial, even referring to and showing portions of the deposition video during its closing arguments. (*See* Trial Tr. 2673:21–2674:4.)

15. In sum, the deposition transcripts of both parties' fact and expert witnesses were necessarily obtained by Dyson, and the costs Dyson seeks for these transcripts are reasonable, because Dyson seeks only the regular copy rate. *See* L.R. 54.1(b) ("If in taxing costs the clerk finds that a transcript or deposition was necessarily obtained, the costs of the transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed.") In fact, Dyson calculated its Bill for the above transcript costs using a simple formula based on that regular copy rate, which is $3.65 per page for an ordinary transcript, rather than a more expensive expedited or daily transcript that Dyson actually purchased. Dyson also did not bill for anything beyond an original copy of the transcripts themselves, *i.e.*, Dyson did not bill for any additional copy, exhibits, roughs, realtime, delivery, or other fees shown on the attached transcript invoices. The calculation for all of Dyson's stenographic deposition transcript costs, as well as the actual invoice prices supporting those costs, totals $29,659.90 as set forth in the Transcript Cost total amount shown in Exhibit 1.

2. *Deposition Videography*

16. Dyson also seeks the reasonable costs of videography for each of the above depositions. Both parties video recorded the deposition of each witness, and both parties used several of those videos during trial. As shown above, the depositions were reasonably necessary, and thus the costs of video-recording (along with stenographic transcription) are taxable to the

losing party. *See Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008); *see also In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 856 (N.D. Ill. 2015) ("[U]nder Seventh Circuit precedent, if a deposition is video-recorded, Rule 54(d) permits an award of costs 'of both video-recording and stenographic transcription to be taxed to the losing party.'") (quoting *Little*, 514 F.3d at 702). "It would be unfair to allow [Shark] access to video recordings of transcripts for possible use at trial and to deny [Dyson] the right to obtain those same video tapes (and, of course, to tax [Shark] for them upon prevailing)." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 856.

17. Just as with the transcripts, the videography costs Dyson seeks are reasonable. Dyson billed only for the videographer's hourly rate and video synching. *Chicago Bd. Options Exchange, Inc.*, 2014 WL 125937, at *7 ("cost for the time spent synchronizing videotaped depositions is generally recoverable" for depositions of witnesses who "appear on the 'will call' or 'may call' witness lists of one or both of the parties"); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, at *3–4 (N.D. Ill. Oct. 20, 2011) (same). Here, the witnesses all appeared on one or both of the parties' witness lists. Moreover, many of the videography fees are for copies of videos already paid for by Shark. Where a prevailing party "[k]now[s] that its opponent possessed video tapes of [] depositions, it [is] reasonable and necessary for [it] to obtain copies." *Top Tobacco, L.P. v. N. Atlantic Operating Co.*, No. 06 C 950, 2007 WL 1149220, at *7 (N.D. Ill. Apr. 17, 2007) (awarding videography fees). Indeed, "[i]n such a hotly contested case, [Dyson] would have been ill-advised not to do so." *Id.* Dyson did not, however, bill for any delivery, expedited, archival, or media fees shown on the attached invoices. The calculation for all of Dyson's videography transcript costs is $27,801.92, as set forth in the Videography total amount set forth in Exhibit 1 (along with the accompanying invoices).

\* \* \*

18. In total, as set forth in the summary and invoices attached to Exhibit 1, for costs associated with stenographic and videography of these necessary depositions, Dyson conservatively seeks $57,461.82.

          3.     *Hearing and Trial Transcripts*

19. In addition to the above deposition transcripts and videography, Dyson seeks reimbursement for certain hearing and trial transcripts ordered from the Court's reporters. Specifically, Dyson's Bill of Costs seeks reimbursement for hearing and trial transcripts totaling $19,786.20. Such transcripts are taxable under the same "necessarily obtained" standard governing depositions. *See Chicago Bd. Options Exchange, Inc.*, 2014 WL 125937, at *2.

20. Dyson moved for a preliminary injunction, which was denied by the Court following an evidentiary hearing. (*See generally* Dkt. 118.) However, as explained in Dyson's exceptionality brief, Dyson alleges that Shark's duplicity in strategically withholding damaging documents at the preliminary injunction hearing is one reason that this case is exceptional, allowing Dyson to seek attorneys' fees. (Dkt. 743 at 1.) Transcripts from the preliminary injunction hearing were therefore especially important in this case—Dyson needed them in order to show the blatant contradictions between the testimony Shark witnesses offered the Court at that hearing, as opposed to at their depositions and then at trial. The pretrial conference and trial transcripts were also necessarily obtained: the former provided Dyson the means to closely review and adhere to the Court's pretrial evidentiary and procedural rulings, while the latter empowered Dyson to hold Shark accountable during trial, where Shark witnesses continued to give false testimony under oath. (Dkt. 743 at 13.) Both parties relied on and showed portions of the trial transcript during closing arguments as well. This, coupled with the use of limiting instructions and of jury questions, rendered the trial transcripts indisputably necessary to Dyson.

21. Furthermore, Dyson's Bill for these hearing and trial transcripts is reasonable. Dyson has only billed for the pretrial transcripts' page count at the ordinary $3.65 per page rate, and in some cases, even less than that. (*See* Exhibit 2 (including underlying invoices).) Additionally, at trial, while Dyson ordered daily transcripts to review each day's witness testimony and Court rulings, and to prepare for the next trial day, Dyson nonetheless seeks only the $5.45 expedited transcript rate in its Bill. Moreover, Dyson has not billed for any delivery, additional copy, or realtime fees. These transcript costs are also taxable where "even if the transcript was not reasonably necessary for use during the trial itself, the transcript [is] essential for use by the plaintiff in responding to the defendants' post-trial motions." *Independence Tube Corp. v. Copperweld Corp.*, 543 F. Supp. 706, 719 (N.D. Ill. 1982) (awarding costs for "7500 pages of trial proceedings").

22. In sum, Dyson seeks $19,786.20 for costs associated with hearing and trial transcripts, as set forth in Exhibit 2.

      **B.    Computerized Legal Research Pursuant to 28 U.S.C. § 1920**

23. In its Bill of Costs, Dyson seeks to recover reasonable costs necessarily incurred for using Westlaw's electronic legal research database. "The Seventh Circuit has held that 'computerized legal research ... [is] properly recoverable by a prevailing party' under § 1920." *Little v. Mitsubishi Motor Mfg. of Am., Inc.*, No. 04-cv-1034, 2007 WL 1232097, at *4 (C.D. Ill. Apr. 26, 2007) (quoting *Burda v. M. Ecker Co.*, 2 F.3d 769, 778 (7th Cir. 1993)), *aff'd*, 514 F.3d 699 (7th Cir. 2008). Importantly, Dyson seeks only the cost of accessing Westlaw for two specific and key time periods: January 2015 and April–June 2018. These months correspond to research conducted in connection with the preliminary injunction hearing and the trial on the merits (including the month during briefing on both parties' motions *in limine* and other pre-trial

submissions). Exhibit 3 contains true and accurate copies of final, redacted invoices[2] to Dyson showing an $18,974.19 charge for Westlaw in January 2015, and a $12,504.74 charge for Westlaw in May 2018. Therefore, Dyson seeks a total of $35,490.62 for conducting reasonably necessary electronic legal research during the months of the preliminary injunction hearing and trial. *Little*, 514 F.3d at 701 (costs for computerized research are authorized by 28 U.S.C. § 1920).

        C.        **E-Discovery Fees Pursuant to 28 U.S.C. § 1920(4)**

        24.        Dyson's Bill of Costs seeks electronic discovery costs in the amount of $2,291.19. "[T]he Seventh Circuit has not fully addressed the extent to which e-discovery costs may be taxed against a non-prevailing party under 28 U.S.C. § 1920." *Allen v. City of Chicago*, No. 10-cv-3183, 2016 WL 1070828, at *8 (N.D. Ill. Mar. 16, 2016) (citation omitted). However, "ESI discovery costs associated with the conversion of ESI into a readable format, such as scanning or otherwise converting a paper version to an electronic version or converting native files to TIFF (if agreed upon by the parties to be the production format), are compensable under § 1920(4)." *Massuda v. Panda Express, Inc.*, No. 12-cv-9683, 2014 WL 148723, at *6 (N.D. Ill. Jan. 15, 2014). Further, "the prevailing party is not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs … Instead, the prevailing party need only provide the best breakdown obtainable from the records." *LG Elecs. U.S.A., Inc.*, 2011 WL 5008425, at *6 (citation and internal quotation marks omitted).

        25.        Here, Dyson relies on invoices it paid to its e-discovery vendor, NightOwl, to support its claim for costs relating only to two processes. Specifically, Dyson seeks $2,026.65 in costs associated with converting documents to TIFF format, and $264.54 in costs associated with

---

[2] Because the invoices contain highly confidential, sensitive and privileged information, they have been submitted in redacted form, providing information only pertinent to the requested costs; all other irrelevant, confidential information has been redacted.

endorsing or bates-stamping production documents. Both of these costs are explicitly authorized by law. *Massuda v. Panda Express, Inc.*, 2014 WL 148723, at *6 (stating that recoverable e-discovery costs include "converting a paper version to an electronic version or converting native files to TIFF"); *Chicago Bd. Options Exchange, Inc.*, 2014 WL 125937, at *9 (holding that "[c]osts for bates stamping are recoverable," and that plaintiff "may thus recover all 'endorsement' costs"). Dyson therefore seeks a total of $2,291.19 in e-discovery costs as set forth in Exhibit 4.

### D. Copying Costs Pursuant to 28 U.S.C. § 1920(4)

26. Dyson also seeks reimbursement for costs associated with photocopies made during the preliminary injunction hearing and during trial on the merits of necessary and critical documents, including exhibit binders for the parties and the Court, witness binders and documents for cross examination, and documents pertaining to jury instructions and other pre-trial order issues. Such costs are recoverable. *The Medicines Co. v. Mylan Inc.*, No. 11-cv-1285, 2017 WL 4882379, at *9 (N.D. Ill. Oct. 30, 2017) ("The Court finds Mylan's copies of the exhibits and witness binders reasonable. The Court, therefore, allows Defendants to recoup the costs of all 7 packets, for a total award of $14,911.98."). Dyson seeks these costs only for the months of January 2015 (*i.e.*, the preliminary injunction hearing) and May and June 2018 (*i.e.*, the trial on the merits).

27. A party need not submit a detailed bill, rather a party is required to provide the best breakdown obtainable. Here, the costs of printing are not itemized, and thus due to the general nature of these expenses as they appear in the final, redacted Dyson invoices attached in Exhibit 3, Dyson voluntarily included a blanket reduction of 50%, and seeks only half of its actual expenses for making these copies, which Dyson calculated from "the best breakdown obtainable from the records." *Id.* at *8 (awarding 50% of total costs incurred). With this reduction, and for only those three critical months in this nearly four-year long matter, Dyson seeks $45,883.60 for costs associated with printing, as reflected in Exhibit 3. *See LG Elecs. U.S.A., Inc.*, 2011 WL 5008425,

at *8 (awarding half of prevailing party's costs for "photocopying of the exhibits for depositions, hearings, and trial").

E. **Witness Fees Pursuant to Fed. R. Civ. P. 26(b)(4)(E)**

28. Finally, in its Bill of Costs, Dyson seeks reasonable fees incurred in responding to expert discovery sought by Shark under Fed. R. Civ. P. 26(b)(4)(E). Rule 26 provides that, "[u]nless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)." As applied here, "the Court can tax costs for expert deposition attendance as well as deposition preparation, including transcript review." *The Medicines Co.*, 2017 WL 4882379, at *7 (awarding the prevailing party "$44,333.50 in expert witness fees"); *LG Elecs. U.S.A., Inc.*, 2011 WL 5008425, at *6 (awarding the prevailing party "a total of $70,593.05 in expert costs"). As explained more specifically below, Dyson conservatively seeks only the accepted 3:1 ratio of preparation-to-deposition time. *The Medicines Co.*, 2017 WL 4882379, at *7–8.

29. First, Dyson seeks costs associated with the deposition preparation and attendance of its damages expert, Ms. Davis. Ms. Davis issued her expert report opining on the disgorgement of Shark's profits on February 2, 2016. Shark deposed Ms. Davis on April 18, 2016. Ms. Davis is an expert in financial consulting with nearly 40 years of experience in the field. She is the only witness Dyson offered to opine on damages in this case. Ms. Davis's expert rate is $900/hour. Shark's deposition of Ms. Davis lasted just over four hours, from 9:30 AM to 1:32 PM. This means that the maximum cost Dyson seeks for her deposition preparation is 12 hours. Therefore, although Ms. Davis's April 30, 2016 invoice shows a total of 18.5 hours billed for her preparation

and attendance at her deposition, Dyson seeks only $14,400 for 16 hours of Ms. Davis's time spent responding to Shark's discovery, as set forth in Exhibit 5.[3]

30.     Second, Dyson seeks costs associated with the deposition preparation and attendance of Ms. Goldsmith at her deposition in connection with the preliminary injunction. At that hearing, Ms. Goldsmith was the only expert witness Dyson offered on Shark's ASTM F608 testing. At the time of the preliminary injunction, Ms. Goldsmith prepared a sworn declaration, and later issued her expert report opining on ASTM F608 test results on February 2, 2016. Shark took Ms. Goldsmith's expert deposition on January 8, 2015. Her expert rate was $481.25/hour for deposition testimony, and $430.625/hour for deposition preparation. Her deposition lasted four hours, from 9:14 AM to 1:13 PM. Although the maximum cost Dyson could seek for Ms. Goldsmith's deposition preparation is 12 hours, Dyson's bill reflects only the 10 hours Ms. Goldsmith actually spent preparing for her deposition. Therefore, Dyson seeks $6,231.25 for 14 hours of Ms. Goldsmith's time spent responding to Shark's discovery, as set forth in Exhibit 5.

31.     Third, given the Court's direction in its Memorandum Opinion and Order on the preliminary injunction to provide additional clarity as to the meaning of achieving statistical confidence in ASTM F608 geomean scores, Dyson retained a statistician, Dr. Marais. (Dkt. 118 at 30 ("The parties should address this concern (likely with the assistance of statistics experts) as they proceed with discovery.").) Dyson seeks costs associated with the deposition preparation and attendance of Dr. Marais. Dr. Marais issued his expert report on opining on the statistical significance of the universe of ASTM F608 test results in this case on February 12, 2016. Shark

---

[3]  The expert's invoices likewise contain confidential and sensitive information. Because the invoices contain such information, they have been submitted in redacted form, providing information only pertinent to the requested costs; all other irrelevant, confidential information has been redacted.

15

took Dr. Marais' deposition on May 5, 2016.[4] Dr. Marais has several advanced degrees in business and mathematics from Stanford University, and his expert rate is $700/hour. His deposition lasted seven hours, from 12:35 PM to 7:40 PM. Therefore, the maximum cost Dyson seeks for Dr. Marais's deposition preparation is 21 hours. While Dr. Marais's deposition invoices combine to total 35 hours, Dyson is only seeking $19,600 for 28 hours of his time spent responding to Shark's discovery, as set forth in Exhibit 5.

32. Fourth, Dyson seeks costs associated with the deposition preparation and attendance of its carpet expert, Mr. Migliore. Mr. Migliore was retained to rebut the expert opinion of Shark's carpet expert, Mr. Gould. Mr. Migliore issued his rebuttal expert report on March 4, 201, responding to the opinions of Mr. Gould. Mr. Migliore is an expert in floor covering with over 45 years of experience in the industry. His expert rate is $375/hour. Shark took Mr. Migliore's deposition on April 5, 2016. That deposition lasted from 9:35 AM to 5:25 PM, which Dyson rounds down to 7 hours. Therefore, as with Dr. Marais, the maximum cost Dyson could seek for Mr. Migliore's deposition preparation and attendance is 28 hours. However, Mr. Migliore required only 24 hours to prepare and attend his deposition, less than Dyson's 28-hour maximum. Therefore, Dyson is seeking $9,000 for 24 hours of Mr. Migliore's time spent responding to Shark's discovery, as set forth in Exhibit 5.

33. Fifth, Dyson seeks costs associated with the deposition preparation and attendance of its ASTM F608 expert at trial, Mr. Miller. Mr. Miller issued his expert report opining on ASTM F608 testing in this case on February 12, 2016. He also issued his rebuttal expert report on March

---

[4] Dr. Marais's deposition was originally scheduled for April 2016. However, the day before the deposition, Shark's counsel cancelled due to illness, and asked to reschedule this deposition for May 5, 2016. Therefore, Dr. Marais's two invoices account for his deposition preparation and attendance for both April and May 2016. But, Dyson is seeking only the limited number of Dr. Marais's hours allowed by law.

4, 2016, responding to Shark's ASTM F608 expert, Mr. Prentice. Mr. Miller is an engineer with over 20 years of experience testing vacuum cleaner performance. His expert rate is $416.50/hour for deposition testimony, and $350/hour for deposition preparation. Shark took Mr. Miller's deposition on April 20, 2016. It lasted from 9:59 AM to 7:29 PM, which Dyson rounds down to 7 hours. Therefore, although the maximum cost Dyson could seek for Mr. Miller's deposition preparation is 21 hours, Dyson seeks only the actual 17.75 hours that Mr. Miller spent preparing. Therefore, Dyson is seeking $9,128 for 24.75 hours of Mr. Miller's time spent responding to Shark's discovery, at the rates forth in Exhibit 5.

### III. DYSON'S BILL OF COSTS

34. In summary, as the prevailing party in this case, Dyson is entitled to seek the following costs, which Dyson respectfully requests that the Court tax against Shark:

- $57,461.82 in deposition reporter, transcript and videography fees under 28 U.S.C. § 1920(2), as set forth in Exhibit 1;

- $19,786.20 in hearing and trial reporter and transcript fees under 28 U.S.C. § 1920(2), as set forth in Exhibit 2;

- $35,490.62 in electronic legal research access fees under 28 U.S.C. § 1920, as set forth in Exhibit 3 and included in "other costs" on Dyson's Bill of Costs;

- $2,291.19 in e-discovery fees under 28 U.S.C. § 1920(4), as set forth in Exhibit 4 and included in "other costs" on Dyson's Bill of Costs;

- $45,883.60 in photocopies made in connection with the preliminary injunction hearing and trial on the merits under 28 U.S.C. § 1920(4), as set forth in Exhibit 3; and

- $58,359.25 in expert witness fees under Fed. R. Civ. P. 26(b)(4)(E), as set forth in Exhibit 5 and included in "other costs" on Dyson's Bill of Costs.

\* \* \*

I declare under penalty of perjury, under laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Dated: July 11, 2018

                                                  /s/ Robin A. McCue
                                                  Robin A. McCue
                                                  Kirkland & Ellis LLP
                                                  *Counsel for Dyson, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2018, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.

By: /s/ Robin A. McCue