**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DYSON, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No.: 1:14-cv-09442 |
| | ) | |
| v. | ) | Judge: Hon. Gary S. Feinerman |
| | ) | |
| SHARKNINJA OPERATING LLC and | ) | **JURY TRIAL DEMANDED** |
| SHARKNINJA SALES COMPANY, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

<u>**DYSON'S REPLY IN SUPPORT OF ITS BILL OF COSTS**</u>

## TABLE OF CONTENTS

I.      DYSON IS THE PREVAILING PARTY ........................................................................ 1

II.     THE ITEMS DYSON SEEKS IN ITS BILL OF COSTS ARE FULLY SUPPORTED AND RECOVERABLE ............................................................... 4

         1.     Deposition Transcripts ................................................................. 4

         2.     Deposition Videography ............................................................. 5

         3.     Hearing and Trial Transcripts ..................................................... 6

         4.     Copying........................................................................................ 7

         5.     Computerized Legal Research .................................................... 9

III.    DYSON'S EXPERT WITNESS FEES ARE SUPPORTED AND APPROPRIATE........................................................................................ 10

IV.    SHARK'S REQUEST FOR OFFSETTING EXPERT WITNESS FEES IS PROCEDURALLY IMPROPER AND SHOULD BE DENIED ............................. 12

V.      CONCLUSION ........................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Artistic Carton Co. v. Thelamco, Inc.*,
    No. 1:06-cv-316, 2008 WL 2622806 (N.D. Ind. June 30, 2008) ............................................ 14

*Baker v. Lindgren*,
    856 F.3d 498 (7th Cir. 2017) ...................................................................................................... 4

*Baxter Intern., Inc. v. McGraw, Inc.*,
    No. 95 C 2723, 1998 WL 102668 (N.D. Ill. Mar. 3, 1998) ...................................................... 7

*Bloch v. Frisholz*,
    No. 06-cv-4472, 2008 WL 4889091 (N.D. Ill. June 26, 2008) ................................................ 9

*Brown v. County of Cook*,
    No. 06-cv-617, 2011 WL 4007333 (N.D. Ill. Sept. 8, 2011) .................................................... 8

*Capital Mach. Co. v. Miller Veneers, Inc.*,
    No. 1:09-cv-00702, 2012 WL 243563 (S.D. Ind. Jan. 25, 2012) ........................................... 13

*Choyce v. Friar*,
    No. 08 C 202, 2008 WL 2567037 (N.D. Ill. June 24, 2008) ................................................... 12

*Dyson, Inc. & Dyson Tech. Ltd. v. SharkNinja Operating LLC & SharkNinja Sales Co.*,
    No. 14-cv-779 (N.D. Ill. Apr. 27, 2018) ................................................................................... 1

*Ellis v. County Club Hills*,
    No. 06-cv-1895, 2012 WL 4009701 (N.D. Ill. Sept. 12, 2012) ................................................ 4

*Goldsmith v. Murphy*,
    No. 02-cv-5777, 2005 WL 442230 (N.D. Ill. Feb. 22, 2005) ................................................... 4

*Haroco v. Am. Nat. Bank & Trust Co. of Chicago*,
    38 F.3d 1429 (7th Cir. 1994) ..................................................................................................... 9

*In re Cardtronics ATM Fee Notice Litig.*,
    874 F.Supp. 2d 916 (S.D. Cal. 2012), *aff'd*, 559 F. App'x 633 (9th Cir. 2014) ...................... 13

*In re Dairy Farmers of Am., Inc.*,
    80 F. Supp. 3d 838 (N.D. Ill. 2015) ......................................................................................... 5

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
    No. 08 C 0242, 2011 WL 5008425 (N.D. Ill. Oct. 20, 2011) ................................................... 8

*Little v. Mitsubishi Motors N. Am., Inc.*,
    514 F.3d 699 (7th Cir. 2008)...................................................................................... 9

*Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*,
    924 F.2d 633 (7th Cir. 1991)................................................................................ 4, 8

*Petersen v. Wasem*,
    No. 91-cv-0538, 1991 WL 119609 (N.D. Ill. June 28, 1991) ................................ 12

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
    481 F.3d 442 (7th Cir. 2007)................................................................................ 3, 4

*Rogers v. Baxter Int'l Inc.*
    No. 04 C 6476, 2011 WL 941188 (N.D. Ill. Mar. 16, 2011) ................................... 9

*Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*,
    873 F. Supp. 2d 939 (N.D. Ill. 2012) ..................................................................... 10

*Spierer v. Rossman*,
    No. 1:13-cv-00991, 2014 WL 4908023 (S.D. Ind. Sept. 30, 2014) ......................... 13

*Testa v. Villa of Mundelein, Ill.*,
    89 F.3d 443 (7th Cir. 1996)...................................................................................... 4

*Thorncreek Apartments I, LLC v. Village of Park Forest*,
    123 F. Supp. 3d 1012 (N.D. Ill. 2015) ..................................................................... 4

*Top Tobacco, L.P. v. N. Atl. Operating Co.*,
    No. 06 C 950, 2007 WL 1149220 (N.D. Ill. Apr. 17, 2007)..................................... 6

*Trading Techs. Intern., Inc. v. eSpeed, Inc.*
    750 F. Supp. 2d 962 (N.D. Ill. 2010). .............................................................. 3, 4, 6

*Trs. of Mich. Reg'l Council of Carpenters' Emp. Benefits Fund v. H.B. Stubbs Co.*,
    No. 2:14-cv-11393, 2014 WL 3543290 (E.D. Mich. July 17, 2014) ....................... 13

*Walker v. County of Cook*,
    No. 05-cv-5634, 2009 WL 65621 (N.D. Ill. Jan. 9, 2009) ................................. 12, 15

*Wells v. City of Chicago*,
    925 F. Supp. 2d 1036 (N.D. Ill. 2013) .............................................................. 9, 10

**Rules**

Fed. R. Civ. P. 26................................................................................................ 10, 11

Fed. R. Civ. P. 30...................................................................................................... 15

Fed. R. Civ. P. 7....................................................................................................... 13

In its zeal to avoid its statutory obligation to reimburse Dyson's costs in this litigation, Shark takes liberties with the law and facts in its Opposition and even contradicts its own recent Bill of Costs filed in this Court when the shoe was on the other foot.   (*See Dyson, Inc., et. al. v. SharkNinja Operating LLC, et. al.*, No. 14-cv-779 (N.D. Ill. Apr. 27, 2018) (Dkt. 528) ("Shark's Prior Bill").)   For instance, Shark ignores controlling law on the global issue of who is the prevailing party—implausibly contending that Dyson is not actually the prevailing party, despite being on the receiving end of a unanimous jury verdict that found both questions against it and awarded $16 million in damages to Dyson.   Shark also ignores well-established law on specific categories of recoverable costs in a fall-back effort to reduce the recoverable amount that Dyson is entitled to recover.   And, in desperation, Shark puts forth a procedurally-improper request for relief of its own, asking the Court to award overbroad, offsetting expert witness fees to Shark in the hope of reducing the amount it must pay.

Recoverable costs are statutory and ought to be a straightforward issue here.   Shark's arguments in Opposition are controverted by controlling law and its own recently-filed Bill of Costs, and should be rejected.   Dyson respectfully requests that its Bill of Costs be entered in the amounts explained in the McCue Declaration (*see generally* Dkt. 760), and clarified below.

## I.     DYSON IS THE PREVAILING PARTY

Shark's Opposition begins with the incredible assertion that Dyson is not the prevailing party because—despite the jury's verdict that Shark willfully committed false advertising for which Shark must pay Dyson $16.4 million in disgorgement—Shark "won 80% of the case" at summary judgment.  (Dkt. 771 at 1–3.)  But the fact that Shark must now pay less in damages than it might have paid had the Court denied Shark's partial summary judgment motion does not result

in Shark being the prevailing party.[1]

**_First_**, Shark argues that it "prevail[ed] on its partial summary judgment motion" because the Court "dismiss[ed] Dyson's implied falsity claim." (Dkt. 771 at 2.) Shark neglects to mention that **_Dyson did not pursue that claim_** during the course of litigation because it became clear that Shark's "cleans carpets better" claim was literally false, as the jury ultimately found. (Dkt. 341 at 25 ("Dyson is not proceeding on an implied falsity theory in this case because the accused claim is unambiguous and literally false."); Dkt. 424 at 25 (granting Shark's motion for partial summary judgment because "Dyson agrees and states that it is not pursuing a claim for misleading ads").) In other words, Shark is claiming victory on a claim that Dyson declined to pursue and thus was never litigated. That hardly amounts to Shark "prevailing" for the purpose of costs.

**_Second_**, Shark argues that it also prevailed because the Court found "that SharkNinja's challenged advertising was true as a matter of law … beginning December 15, 2014." (Dkt. 771 at 2.) But again, Shark neglects to mention that the Court found Shark's "cleans carpets better" claim became true because Shark rigged its product manual to "match" its already-rigged substantiation testing in December 2014. (Dkt. 424 at 27–30 (granting Shark's motion for partial summary judgment because "the facts are undisputed as to the validity of [Shark]'s testing as of the date it changed its manual").) Shark's ability to convince the Court that it **_stopped_** lying to

---

[1] Shark's passing reference to the Court's order on Dyson's motion for a preliminary injunction is unpersuasive. (Dkt. 771 at 3 n.1.) Shark notes that Dyson lost that motion because the Court determined that, with Shark's manual change, an injunction was not applicable. Putting aside that the standard for a preliminary injunction is a higher one and not indicative of ultimate success on the merits as determined by the jury here, in this case, it is all the more distinct where Shark admittedly did not provide the Court with critical, relevant documents at the preliminary injunction phase. (*See* Dkt. 743 at 9–12.) The jury got to see all of the facts and determined that Dyson did, in fact, prevail on the merits. (Dkt. 738.) As explained in Dyson's motion for exceptional case, Shark took numerous steps to deprive Dyson of material evidence during the preliminary injunction phase, skewing the outcome in its favor. (Dkt. 743 at 9–12.)

consumers about the carpet-cleanability of its Rotator Powered Lift-Away in December 2014 does not mean that Shark prevailed in anything other than reducing its disgorgement damages.

*Third*, and most importantly, the very argument advanced by Shark here has been rejected by the Seventh Circuit and this Court. Specifically, the Seventh Circuit has instructed that a defendant is *not* a "prevailing party under Rule 54(d) if its only success in the district court is a reduction of the plaintiff's damages award." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 446-447 (7th Cir. 2007) (reversing district court's decision to award costs to the defendant where defendant only prevailed in reducing plaintiff's damages). Indeed, the court in that case recognized that "a determination of who is the prevailing party for purposes of awarding costs should *not depend* on the position of the parties *at each stage of the litigation* but should be made *when the controversy is finally decided*." *Id.* ("In this case, [plaintiff] prevailed … because the district court entered a $7.44 million judgment in its favor") (emphasis added). Similarly, in *Trading Techs. Intern., Inc. v. eSpeed, Inc.*—to which Shark cites multiple times in its Opposition—the court rejected that defendant's argument that the parties should bear their own costs because the court granted its motion for partial summary judgment and "essentially disallowed the bulk of damages that [plaintiff] would have sought at trial." 750 F. Supp. 2d 962, 966 (N.D. Ill. 2010). The court in that case recognized that "[t]he Supreme Court has held that a judgment for damages *in any amount* modifies the defendant's behavior for the plaintiff's benefit, thus signifying the plaintiff as the prevailing party." *Id.* at 967 ("[A] party may prevail on some issues, but not others, and still be considered the prevailing party.") (citations omitted).

None of Shark's numerous cases overcome the rulings in *Republic Tobacco* and *Trading Technologies*. To the contrary, Shark's cases involve a "mixed verdict" which is decidedly not

the case here.[2]  Here, the jury unanimously found for Dyson on the only claim at issue in this case, and awarded Dyson $16.4 million in damages.  This case is on all fours with *Republic Tobacco* and *Trading Technologies*, and Dyson is clearly the prevailing party here.[3]  (Dkt. 738).

## II.   THE ITEMS DYSON SEEKS IN ITS BILL OF COSTS ARE FULLY SUPPORTED AND RECOVERABLE

Contrary to Shark's unsupported suggestions otherwise, ***every single item*** in Dyson's Bill is fully supported and recoverable under 28 U.S.C. § 1920.

### 1.    *Deposition Transcripts*

Shark does not object to Dyson's right to bill Shark for any single deposition transcript produced in this case, but instead objects to instances where the rate that appears for the original copy of a transcript exceeds the Court's regular copy rate.  (Dkt. 771 at 4.)  Dyson chose to

---

[2]  *See Testa v. Villa of Mundelein, Ill.*, 89 F.3d 443, 447 (7th Cir. 1996) ("mixed outcome" where jury found for plaintiff on his malicious prosecution claim, but found for defendants on plaintiff's § 1983 claim); *Ellis v. County Club Hills*, No. 06-cv-1895, 2012 WL 4009701, at *1–2 (N.D. Ill. Sept. 12, 2012) (in another § 1983 case, citing *Republic Tobacco* for the idea that the prevailing party determination "should be made when the controversy is finally decided," but noting that "[h]ere, the jury's verdict was mixed"); *Baker v. Lindgren*, 856 F.3d 498, 500–502 (7th Cir. 2017) ("[Plaintiff] won a modest recovery from several City defendants on one of the civil rights claims, and from the City defendants and a private defendant on one of the state law tort claims, but the defendants prevailed on all the remaining claims."); *Goldsmith v. Murphy*, No. 02-cv-5777, 2005 WL 442230, at *3–4 (N.D. Ill. Feb. 22, 2005) (finding "mixed results" where, with respect to plaintiff's four counts, the jury returned verdicts favoring certain defendants for three counts, and a verdict favoring plaintiff on one count); *Thorncreek Apartments I, LLC v. Village of Park Forest*, 123 F. Supp. 3d 1012, 1014–16 (N.D. Ill. 2015) (requiring parties to bear their own costs where plaintiff "prevailed on just one of several claims against just two of the eleven defendants," making it "impossible to disentangle and allocate the costs expended by either side as between the prevailing and non-prevailing defendants"); *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 641–42 (7th Cir. 1991) (refusing to award costs to counterclaim-plaintiff for its crossclaim against counterclaim-defendant because counterclaim-defendant "prevailed on the resolution of this central issue").

[3]  Shark's opposition also overlooks that Dyson was granted summary judgment on all Shark's affirmative defenses, which under Shark's math, would render the summary judgment stage a "tie," followed by the jury verdict in Dyson's favor.  (Dkt. 424 at 31–34.)

calculate its Bill using the regular copy rate for simplicity, despite actually paying thousands of dollars *more* than that for faster delivery or other conveniences like Realtime. Shark's Opposition takes a different approach, using a line-by-line critique to save itself about a thousand dollars. (*Id.*) To streamline the Court's decision on Dyson's Bill, Dyson accepts Shark's $28,630.40 number.

## 2. *Deposition Videography*

Shark argues that Dyson is not entitled to almost 94% of the amount Dyson claims for deposition videography in this case because, according to Shark, Dyson has not shown that the costs were necessary. (Dkt. 771 at 4–6.) Notably, Shark does not allege that any of the amounts claimed by Dyson were unreasonable; Shark only complains that it should not have to pay the full amount. But Shark has previously taken the position that these exact costs were necessary in a prior case between the parties, and, in fact, these costs were necessary here, as discussed in Dyson's opening supporting declaration. (Dkt. 760 at 8–9.) Dyson should be reimbursed for these costs.

***First***, the videography costs include costs associated with obtaining videos of the numerous Dyson fact and expert witnesses. Notably, the videos of Dyson's witnesses were ordered by ***both*** parties. Shark, however, argues that while ***Shark*** needed the videos of Dyson's witnesses, it was not "necessary" for ***Dyson*** to have copies of those same videos. Shark's argument is disingenuous and, contrary to the law, seeks to punish Dyson for wanting a level playing field: "It would be unfair to allow [non-prevailing party] access to video recordings of transcripts for possible use at trial and to deny [prevailing party] the right to obtain those same video tapes (and, of course, to tax the [non-prevailing party] for them upon prevailing)." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 856 (N.D. Ill. 2015). To be sure, "[k]nowing that its opponent possessed video tapes of these depositions, it was reasonable and necessary for [the prevailing party] to obtain copies. In such a hotly contested case, [the prevailing party] would have been ill-advised not to do so." *Top Tobacco, L.P. v. N. Atl. Operating Co.*, No. 06 C 950, 2007 WL 1149220, at *7 (N.D. Ill. Apr.

5

17, 2007) (awarding deposition videography costs).

**Second**, the videography costs for depositions of **Shark's** witnesses were likewise necessary. Just like the third-party witnesses that Shark agrees Dyson can recover (Dkt. 771 at 5), every single one of Shark's witnesses was outside the subpoena power of the Court, and at the time Dyson took the depositions—and consequently ordered the videos—Dyson had no way to know whether Shark would make these witnesses available at trial. *Trading Techs. Intern., Inc.*, 750 F. Supp. 2d at 975 ("Necessity is determined in light of the facts known at the time of the deposition.") (citation and internal quotation marks omitted). Notably, when Shark prevailed against Dyson in a recent design patent case, Shark itself sought these same costs in the amount of $22,401.50 and argued that "[c]ourts in this District have determined that if a witness is not subject to the court's subpoena power and is likely to be called at trial, the costs of video recording may be recovered." (*See* Shark's Prior Bill at 7.) The same is true here, and Dyson is entitled to recover these costs in the full $27,801.92 amount claimed in its Bill.

### 3. Hearing and Trial Transcripts

With respect to Dyson's Bill for hearing transcripts, Shark only disputes three that it argues were unnecessary. Dyson maintains that each of these transcripts, totaling $196.05, was necessary for Dyson to order for the very reasons that Shark summarizes in its Opposition. (Dkt. 771 at 7.) Nevertheless, to streamline resolution of the issues, Dyson accepts Shark's proposed reduction.

With respect to Dyson's Bill for trial transcripts, Shark is mistaken as to the total amount charged to the parties for those transcripts. As clearly reflected on Dyson's invoice, the total amount due to the court reporter for pretrial hearing and trial transcripts was $32,386.25, **not** the $16,224.65 on which Shark's calculation is based. (*Compare* Dkt. 760-2 at 14 (sum of the "Total

Charges")[4] *with* Dkt. 771-2 at 4 (Shark's calculation of total trial transcript costs).)  In other words, the total amount billed to the parties was $32,386.25, and the invoice submitted by Dyson with its Bill reflects only **Dyson's** portion of the total costs, which was $16,193.12.[5]  (Dkt. 760-2 at 14.)

Rather than account for the total $32,386.25 invoiced to the parties, Shark instead tries to use the $16,193.12 that Dyson—which is already "half" of the invoice—paid as the denominator in calculating the amount that each party paid for the transcripts, arguing that it only owes Dyson $8,112.33.  (Dkt. 771 at 7.)  Shark's (mis)calculation would result in Shark only paying approximately **half of Dyson's half** of the transcript costs.  That makes no sense, and Shark does not explain how it arrived at this self-serving methodology.  Instead, despite Dyson's entitlement to a single copy of these transcripts at the expedited rate—a rate that Shark does not challenge (*see* Dkt. 771 at 7), which results in the $16,224.65 amount originally shown in Exhibit 2 to Dyson's Bill (Dkt. 760-2 at 2)—Dyson will accept the lesser $16,193.12 amount.

### 4.   Copying

Shark's Opposition complains that Dyson's Bill "fails to provide the requisite supporting documentation" to award any amount of Dyson's copying costs and thus Dyson cannot recover

---

[4]   The total sum of $32,386.25 includes $1092.20 for 172 expedited pages; $20,336.25 for 2,805 daily pages; and $10,957.80 for Realtime.  (Dkt. 760-2 at 14.)  Dyson did not seek its Realtime fees, and it properly followed the Judicial Conference's guidance, and calculated the rate for transcript pages under L.R. 54.1, using the $5.45 expedited rate multiplied by 2,977 pages.

[5]   The Court has already observed that agreements to share trial transcript costs favor the losing party, because, absent the agreement, the losing party would have paid the full cost for its own copy **in addition to** the prevailing party's cost for the original.  For example, if the prevailing party "had first ordered the transcripts at the rate for their production and then [the losing parties] had separately ordered the transcripts obtaining the copy rate, … the losing parties would ultimately have had to pay not only for their copy but also for the expense of the original transcription as a cost of [the prevailing party]."  *Baxter Intern., Inc. v. McGraw, Inc.*, No. 95 C 2723, 1998 WL 102668, at *6 (N.D. Ill. Mar. 3, 1998).  In this scenario, "[t]here is no reason of which the court is aware that [the prevailing party] should be punished for having agreed during the trial to share the expense of the daily transcripts, which is what acceptance of [the losing parties]' position would come to."  *Id.*

any such costs. (Dkt. 771 at 7.) It is well settled that a prevailing party need not "submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," and must only "provide the best breakdown obtainable from retained records." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991) (affirming district court's determination that "a copying bill of more than $50,000 was large" but "not excessive in the context of a six-year paper war.") (citation and internal quotation marks omitted). Here, Dyson agrees that it cannot seek costs for copies made for attorney convenience or otherwise unnecessary purposes. But Shark is wrong that Dyson cannot recover a single dollar for its substantial copying costs. (Dkt. 760-3 at 2.) Dyson is only seeking copying costs for a conservative ***three months*** out of this three-and-a-half year case: January 2015, and May and June 2018. (Dkt. 760-3 at 2 (summary chart).) These months correspond to the preliminary injunction hearing and trial on the merits. In this circumstance, where Dyson's invoices do not provide granularity, but where a substantial portion of the copying costs it incurred were necessary to prepare and participate in these critical aspects of the case, the Court is empowered to award Dyson a percentage of its costs. *See LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, at *8 (N.D. Ill. Oct. 20, 2011) ("[S]ome photocopying costs are warranted due to … the complexity and length of this lawsuit in which the exhibits were used in presenting evidence to the Court and jury … The Court thus reduces Whirlpool's request by half and awards Whirlpool a total of $33,134.94 for the costs associated with photocopying of the exhibits for depositions, hearings, and trial.") (citations omitted); *Brown v. County of Cook*, No. 06-cv-617, 2011 WL 4007333, at *4 (N.D. Ill. Sept. 8, 2011) ("The Court finds that a 50% reduction in [copying] costs is appropriate given that the [prevailing party]'s submissions, though lacking in detail, show that [prevailing party] incurred substantial copying costs."). Indeed, just

8

as Shark did with respect to certain costs that were "not itemized" in its bill from the design patent case, (Shark's Prior Bill at 14), Dyson voluntarily sought *only half of the invoiced amounts for three critical months* in its Bill in this case, which amounts to only about 30% of all copying costs in this case, and accordingly, these costs should be awarded.

5.    *Computerized Legal Research*

Shark opposes Dyson's request for Westlaw fees by relying on an almost twenty-five-year-old, inapplicable Seventh Circuit case. In *Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, such costs were denied because they were "considered attorney's fees." 38 F.3d 1429, 1440–41 (7th Cir. 1994); (Dkt. 771 at 9 (citing *Haroco*, 38 F.3d at 1440–41).) Dyson notes that this logic does not prevent Dyson from seeking reimbursement for this cost should it succeed on its exceptional case motion. (Dkts. 742, 743); *Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1049 (N.D. Ill. 2013) (awarding computerized legal research expense "as part of an attorney's fee award," and "reduc[ing] it by two-thirds" where the expense was "not broken down"). But Shark's distinction is conceptually inapplicable here, where Dyson's invoices bill Westlaw access fees as a separate "expense" from any attorney fees generated using the Westlaw service. *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 701 (7th Cir. 2008) (affirming award of computerized legal research costs). To be sure, cases since *Little* have recognized this difference *and awarded this cost*. *Bloch v. Frishholz*, No. 06-cv-4472, 2008 WL 4889091, at *4 (N.D. Ill. June 26, 2008) ("Defendants say that is the cost of using the database, not attorney time spent researching, a cost the Seventh Circuit has recently held to be recoverable under 28 U.S.C. § 1920.") (citing *Little*, 514 F.3d at 701) (awarding computerized legal research costs). Shark's reliance on *Rogers v. Baxter Int'l Inc.* is misplaced because—again—just as Shark argued in the design patent case, the Court may still award a percentage of costs that are "not itemized." (Shark's Prior Bill at 14); *compare* No. 04 C 6476, 2011 WL 941188, at *5 (N.D. Ill. Mar. 16, 2011), *with*

9

*Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1049 (N.D. Ill. 2013) (awarding computerized legal research, but "reduc[ing] it by two-thirds" where the expense was "not broken down").

## III.     DYSON'S EXPERT WITNESS FEES ARE SUPPORTED AND APPROPRIATE

Shark does not dispute that Dyson can recover its experts' fees pursuant to Fed. R. Civ. P. 26(b)(4)(E), but Shark nonetheless argues that Dyson should not be able to recover the fees relating to the expert depositions of Susan Goldsmith and Dr. Laurentius Marais. (Dkt. 771 at 11–12.) Shark's dispute of those fees is meritless, and both of these amounts should be awarded in full.

*First,* Shark does not dispute that Ms. Goldsmith served as Dyson's ASTM F608 expert in connection with Dyson's motion for a preliminary injunction, that Shark took her deposition as Dyson's expert on January 8, 2015 in connection with the evidentiary hearing on that motion, and that she issued a written expert report containing her opinions in this case pursuant to Fed. R. Civ. P. 26(b)(4). (*See* Dkt. 771 at 11.) In fact, Shark agrees: "Ms. Goldsmith was hired by Dyson as a testifying expert to analyze data and offer affirmative expert opinions." (Dkt. 662 at 1.) "[U]nder Rule 26(b)(4)(E), compensating an expert for time spent in responding to discovery is mandatory." *Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 954 (N.D. Ill. 2012).

In order to avoid paying the costs associated with Ms. Goldsmith's expert deposition, Shark inexplicably argues that Ms. Goldsmith's testimony is duplicative of Dan Miller's testimony. Shark's argument is ironic given that it argued before and during trial that the testimony of those two witnesses was *not* duplicative. When Shark wanted to introduce Ms. Goldsmith's testimony at trial, it claimed that Ms. Goldsmith's "prior testimony for Dyson remains relevant and admissible *to rebut* Mr. Miller." (Dkt. 631 at 14 (emphasis added).) Now, Shark claims the testimony was the same. However, even setting aside yet another of Shark's 180-degree reversals in its post-trial briefs, Ms. Goldsmith was Dyson's *only* ASTM F608 expert at the preliminary injunction hearing, and Dyson is *only* seeking the costs associated with her January 2015

preliminary injunction deposition. Moreover, as Dyson previously explained in opposition to Shark's related bench memorandum—which the Court denied at the Final Pretrial Conference (5/23/2018 PTC Hr'g PM Tr. at 202:17–203:8)—"Ms. Goldsmith only opined on the subset of tests included in her report, which were conducted by IBR prior to April 2015 … Mr. Miller will only introduce two IBR tests conducted in November 2015." (Dkt. 659 at 11.) In other words, in the January 2015 deposition, Ms. Goldsmith did not opine on the same test reports or subject matter as Mr. Miller. Importantly, Shark *does not* challenge the reasonableness of Ms. Goldsmith's expert rate, and because its new-found "duplicative" argument fails, Dyson may recover the entirety of the $6,231.25 in fees "for time spent responding to discovery" when Ms. Goldsmith was deposed in January 2015. Fed. R. Civ. P. 26(b)(4)(E).

*Second*, Shark's sole argument with respect to Dr. Marais is that his invoices are not specific enough to allow Dyson to recover any of his expert fees. (Dkt. 771 at 11.) This argument is refuted by the Court's operative Scheduling Order and the correspondence between the parties. (Dkt. 155.) Pursuant to that Order, Dr. Marais served his expert report on February 12, 2016, (*id.*), and the close of expert discovery was set for April 20, 2016, (Dkt. 302). Although Dr. Marais's deposition was originally set for April 12, 2016, it was rescheduled at the last minute due to Shark's counsel's illness. (Ex. 1, 4/11/2016 C. Gately email to I. Block). Dr. Marais's expert deposition ultimately took place on May 5, 2016. There is no dispute on the dates of his deposition, and it is clear from the invoices submitted with Dyson's Bill—*i.e.,* the invoices for the months of April and May 2016 (Dkt. 760-5 at 5–6)—that those correspond to days of his originally scheduled deposition and his rescheduled deposition. The *only possible work* Dr. Marais could have performed in this time would be to prepare for and attend his deposition.

Nevertheless, given Shark's concerns, Dyson requested Dr. Marais' specific time sheets,

which provide the underlying hourly breakdowns establishing the time preparing for and attending his deposition. (*See* Ex. 2, Declaration of Stephen R. Hoff, and Exs. A and B thereto.) To be sure, those time sheets show that the time spent in April and May—after the issuance of his expert report—was in preparation for his deposition.[6] While these line items total 28.9 hours, Dyson seeks only 28 of these hours under the Court's 3-to-1 ratio, which Shark does not dispute. (Dkt. 760 ¶ 31.) The $19,600 in fees relating to Dr. Marais' expert deposition is proper.

## IV. SHARK'S REQUEST FOR OFFSETTING EXPERT WITNESS FEES IS PROCEDURALLY IMPROPER AND SHOULD BE DENIED

Shark's Opposition "respectfully moves" for reimbursement of Shark's own expert witness fees. (Dkt. 771 at 12.) At the outset, Dyson notes that Shark's casual request for relief in an opposition brief is procedurally improper, and numerous district courts—including this Court and others in this Circuit—have denied such relief for this reason. *Walker v. County of Cook*, No. 05-cv-5634, 2009 WL 65621, at *3 (N.D. Ill. Jan. 9, 2009) ("Such a request in an answer to a motion is improper and should have been brought in a separate motion. We therefore deny the request."); *Choyce v. Friar*, No. 08 C 202, 2008 WL 2567037, at *4 (N.D. Ill. June 24, 2008) ("[I]t not proper [*sic*] to bring a motion in an opposition brief."); *Petersen v. Wasem*, No. 91-cv-0538, 1991 WL 119609, at *2 (N.D. Ill. June 28, 1991) ("The response brief is an improper vehicle for requesting such leave."); *Spierer v. Rossman*, No. 1:13-cv-00991, 2014 WL 4908023, at *7 (S.D. Ind. Sept.

---

[6] The original invoices submitted with Dyson's Bill totaled 35 hours, but Dyson sought to recover only 28 hour under the 3:1 ratio. (Dkt. 760-5.) To be sure, the remaining 6 hours were spent preparing for his deposition: As Dr. Marais explained in his deposition, in light of Shark's experts' rebuttal reports and criticisms, he prepared additional analyses specifically in preparation for his deposition so that he could respond to any questioning by Shark's counsel on those points. (Ex. 3, 5/5/2016 L. Marais Dep. Tr. at 176:18–177:5.) Nonetheless, Dyson is not seeking to recover that time and has conservatively only included those entries that expressly refer to conferring with counsel and preparing for his deposition on the days immediately preceding the scheduled deposition dates.

30, 2014) ("[E]ven if the Spierers had intended to include a motion in their responses, the Court would have to deny them on procedural grounds because they are impermissibly contained in response briefs."); *Capital Mach. Co. v. Miller Veneers, Inc.*, No. 1:09-cv-00702, 2012 WL 243563, at \*3 (S.D. Ind. Jan. 25, 2012) (denying a request for leave to amend buried in a response brief rather than in a separate motion with independent briefing); *Trs. of Mich. Reg'l Council of Carpenters' Emp. Benefits Fund v. H.B. Stubbs Co.*, No. 2:14-cv-11393, 2014 WL 3543290, at \*12 (E.D. Mich. July 17, 2014) (finding that a request in a responsive brief is procedurally improper); *In re Cardtronics ATM Fee Notice Litig.*, 874 F.Supp. 2d 916, 927 (S.D. Cal. 2012), *aff'd*, 559 F. App'x 633 (9th Cir. 2014) (plaintiff cannot request relief in an opposition brief."); *see also* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); Local Rule 5.3(b) ("Every motion … shall be accompanied by a notice of presentment specifying the date and time on which, and judge before whom, the motion … is to be presented."). As a result, Shark may not recover its costs in this manner. Regardless, in addition to being improperly-sought, Shark's request is also overbroad in several key respects.

*First*, with respect to Dr. Barnett, Shark's Opposition correctly notes that "Dyson's deposition of Dr. Barnett went for just over 5 hours" (Dkt. 771 at 14), and Dr. Barnett's supporting invoices show 6.5 hours spent preparing for his deposition (Dkt. 771-3 at 3–4), for a total of 11.5 hours.[7] Therefore, at his expert rate of $725 per hour, Shark can recover only $8,337.50 for Dr. Barnett's time spent preparing for and attending his deposition, not the $9,787 Shark seeks.

---

[7] Presumably, Shark arrived at its claimed 13.5 hour total by including the full 7 hours that Dr. Barnett billed Shark to sit for his deposition, rather than the 5 hours Shark recognizes he actually spent at his deposition. (*Compare* Dkt. 771-3 at 4, *with* Dkt. 771 at 14.) But Shark does not explain why Dyson should pay for the two additional hours that Shark paid for Dr. Barnett's time, which exceeded the time that Dr. Barnett actually spent "responding to discovery" under Fed. R. Civ. P. 26(b)(4)(E).

**Second**, with respect to Mr. Gould, Shark includes fees associated with "responding to Dyson's subpoena." (Dkt. 771 at 14.) Shark cites no support for this, and in fact courts have held that an expert responding to a subpoena is performing "clerical work," for which they should instead be reimbursed at a much-lower clerical, non-expert rate. *See, e.g.*, *Artistic Carton Co. v. Thelamco, Inc.*, No. 1:06-cv-316, 2008 WL 2622806, at *5 (N.D. Ind. June 30, 2008) ("[W]e find that the hourly rate of $50.00 is a reasonable fee for the clerical work [expert] performed in responding to the [plaintiff]'s subpoena."). Applying a $50 per hour rate to the half-hour Mr. Gould spent responding to Dyson's subpoena results in a $25 charge for that work. Additionally, Shark claims it is entitled to $6,750 for 15 hours Mr. Gould spent responding to Dyson's discovery. (Dkt. 771 at 14–15.) Dyson acknowledges that Shark is claiming four hours of deposition **preparation** time for Mr. Gould. (Dkt. 771-3 at 5.) But Shark only actually paid Mr. Gould $2,500 for his deposition **attendance** time, so there is no basis to make Dyson pay more than this amount for that expense. Finally, Shark cannot justify billing Dyson for the entire **five hours** that Mr. Gould billed Shark at his full expert rate to "[r]eview [the] transcript" of his 407-page deposition for errata. (Dkt. 771-3 at 6.) While Dyson agrees such fees are recoverable, the standard requires that such fees be **reasonable**. With all due respect to Mr. Gould, five hours is not reasonable. In total, Mr. Gould's bill should be reduced to $5,675, which represents four hours of preparation time, .5 hours responding to Dyson's subpoena, daily deposition attendance, and three hours of deposition transcript review.[8]

**Third**, with respect to Mr. Prentice, Shark's request is also overbroad and inconsistent with statements made on the record at his deposition. Specifically, Shark asserts that Mr. Prentice's

---

[8]     Notably, Dr. Marais spent only 1.2 hours reviewing his transcript. Assuming it took Mr. Gould twice as long, the "reasonable" time would be 3 hours.

deposition "went for just about 9.5 hours from 9:21 a.m. to 6:47 p.m." (Dkt. 771 at 15), but Shark's counsel observed on the record, at 6:30 p.m., that "I think we are about 7 hours into it." (Ex. 4, 4/15/2016 J. Prentice Dep. Tr. at 430:1–6.) A few minutes earlier, at 6:27 p.m., the videographer even noted that "[w]e are about 6 hours into this." (*Id.* at 429:24–25.) Given that Mr. Prentice's deposition went off the record at 6:47 p.m., neither of these estimates are close to the blanket 9.5 hours that Shark asserts, let alone the 10 hours claimed in Mr. Prentice's invoice. (Dkt. 771-3 at 13.) Moreover, the Court's operative Stipulated Protective Order only allowed that "[d]eposition limits and the parties' rights … have their full scope and time allotment under the Federal Rules of Civil Procedure." (Dkt. 142 at 17; Dkt. 532 at 17.) And those Rules limit the duration of a deposition in federal court to "1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). Shark provides no basis for deviating from this maximum rule, especially since Dyson voluntarily reduced the hours it claims for Mr. Migliore's and Mr. Miller's deposition attendance to 7 hours. (Dkt. 760 ¶¶ 32, 33.) Additionally, Mr. Prentice claimed only 13 hours of "preparation meeting" on his invoice. (Dkt. 771-3 at 13.) Therefore, Shark's request for Mr. Prentice's expert fees should be reduced to $6,000, which represents 7 hours of deposition attendance and 13 hours of deposition preparation.

In short, Shark's attempt to offset its expert witness fees is at least $5,824.50 more than it properly could be, but that calculation is beside the point given that its entire "offset" request is procedurally improper. *See, e.g.*, *Walker*, 2009 WL 65621, at *3.

## V.     CONCLUSION

Dyson is plainly the prevailing party in this case, and therefore Dyson is entitled to recover its costs from Shark. Dyson respectfully requests that the Court enter an order directing Shark to pay Dyson's costs and reasonable expert fees as follows: $28,630.40 for deposition transcripts; $27,801.92 for deposition videography; $19,558.62 for hearing and trial transcripts; $45,883.60 for copying; $35,490.62 for Westlaw; and $58,359.25 for expert fees.

Dated: August 13, 2018                Respectfully submitted,

By:   */s/ Robin A. McCue*

Robin A. McCue (IL Bar No. 6256551)
rmccue@kirkland.com
Megan M. New (IL Bar No. 6300442)
megan.new@kirkland.com
Brian A. Verbus (IL Bar No. 6314193)
brian.verbus@kirkland.com
Greg Polins (IL Bar No. 6309928)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
glocascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

*Counsel for Plaintiff Dyson, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2018, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.


By: */s/ Robin A. McCue*_____